## WEEKS v. SAN ANGELO NAT. BANK.
### No. 7859.

Court of Civil Appeals of Texas. Austin.
Oct. 25, 1933.

Rehearing Denied Nov. 15, 1933.

E. S. Cummings, of Abilene, and Baker & Baker, of Coleman, for appellant.

Harris, Harris & Sedberry and Upton & Upton, all of San Angelo, for appellee.

McCLENDON, Chief Justice.

The bank sued Weeks upon a promissory note signed "Weeks Drug Store No. 4, By Jno. A. Weeks." Weeks defended upon the ground that the note was made for the benefit of a corporation then in course of being organized, and upon express agreement with the bank there was to be no personal liability on his part; that the corporation was thereafter chartered, assumed the obligation of the note, and the bank thereafter treated the note as the corporation's obligation, and looked to it alone for payment. The appeal is by Weeks from a judgment against him for the unpaid balance of the note, rendered upon a directed verdict.

The controlling question presented by the appeal is the correctness of the trial court's action in directing the verdict.

The evidence, viewed most strongly for appellant, and disregarding conflicts in testimony, will support the following findings:

Miller owned a drug store in San Angelo which he had previously conducted in partnership with Schwab, under the firm name of Schwab Drug Store. A contract was entered into between Miller, Weeks, and Earnshaw, whereby the business was to be incorporated under the name of Weeks Drug Store No. 4, Inc. The stock and fixtures were valued at $25,000, and corporate stock was to be subscribed for that amount, but only $20,000 paid in. The business owed about $5,000, and the corporation was to assume a debt to that amount and issue paid-up stock to Miller for $10,000, and to Weeks and Earnshaw each for $5,000. The remaining $5,000 was subscribed, $2,500 each by Weeks and Earnshaw. The two latter paid Miller $10,000 in real estate for a like interest in the drug store stock. A corporation charter was drawn in accordance with this agreement and forwarded to the secretary of state. Weeks applied to the bank's cashier for a loan of $5,000, explaining the transaction, and inquired whether the bank would make the loan upon the faith alone of the corporation, then in course of being organized, and without any personal liability on his part. To this the cashier assented and the note (dated November 15, 1929) was executed, being signed by Weeks in the manner stated above. The proceeds of the note were transferred on the books of the bank to the account of Schwab Drug Store, under agreement with the cashier that he would see that it was applied to the debts of the business; which agreement was carried out. For some irregularity the incorporation papers were returned by the secretary of state, and new papers drawn on November 18, 1929, upon which a charter was issued December 22, 1929. The affidavit upon which the charter was granted showed the stock transaction as above detailed, reciting that the Schwab Drug Store stock "is free of debt and encumbrance, with the exception of Five Thousand ($5,000.00) Dollars indebtedness held by the San Angelo National Bank." After the incorporation the bank made other loans direct to the corporation, and accepted interest payments on the $5,000 note from the corporation. All of these items were carried

in a single account on the books of the bank in the name of Weeks Drug Store No. 4. Shortly after the incorporation Weeks offered on behalf of the corporation to make a new note, but the cashier told him that would be unnecessary, as it would be signed in the same way. In July, 1930, Weeks sold most of his stock to McWilliams, and the corporate name was changed to "McWilliams Drug Store, Inc." The corporation was thrown into bankruptcy in 1931; the bank proved up its claim, including the $5,000 note, and received several dividends which were admitted as credits on the note. The trustee in bankruptcy sued Weeks and Earnshaw upon their unpaid stock subscriptions; which suit was compromised in some manner not shown by the record.

Briefly stated, the contentions of appellee are that: The corporation being nonexistent when the note was executed, it was necessarily the personal obligation of Weeks; his signature in the manner used was merely a trade-name; parol evidence was not admissible to show the contemporaneous agreement with the cashier, since it was at variance with the terms of the note; the subsequent adoption of the obligations of the note by the corporation did not affect the then existing personal liability of Weeks; the evidence would not support a finding of a novation of the obligation, or that there was a release of Weeks' personal liability and acceptance of that of the corporation in lieu thereof.

■ It is quite generally held that a contract made by a promoter of a corporation, in its behalf and upon express agreement that the corporation alone is to be bound, and no personal liability is to exist against the contracting promoter, is valid, provided the contract is one which the corporation, if it were then in existence, could legally make; and a subsequent adoption of the contract by the corporation will relieve the promoter of personal liability thereon. 1 Fletcher's Cyclopedia of the Law of Private Corporations, p. 719, and cases cited in note 13; 14 C. J. p. 270, and note 56; 7 R. C. L., pp. 85, 86, and note 4. See, also, for a very clear and comprehensive treatise upon the entire subject, 31 Yale Law Journal, pp. 1011 et seq.

The exact theory upon which this principle is rested is a subject of some divergence of view among the authorities. The agency theory is quite generally rejected on the ground that the principal is nonexistent at the time the contract is executed; hence "ratification" by the corporation, in the strict legal significance of that term, is held in many cases to be inept. "Adoption" is the term most generally employed, although Prof. Williston (1 Cont. p. 582) opines that "novation seems the more accurate term." We read: "If the assent of the corporation to the bargain is merely an adoption of it, the promoter apparently must still remain liable.

But it seems more nearly to correspond with the intentions of the parties to suppose that when the corporation assents to the contract, it assents to take the place of the promoter —a change of parties to which the other side of the contract assented in advance. There would then be a novation which would discharge the promoter at the same time the corporation assumed the obligation."

Whatever view may be taken as to the proper course of reasoning applicable, the same result is reached, and, as stated above, the rule is generally recognized.

The question does not seem to have arisen in this jurisdiction in a case where it was necessary to the decision, although it has been recognized in several cases substantially as above stated. Bradshaw v. Jones (Tex. Civ. App.) 152 S. W. 695 (error ref.); Ennis Cotton-Oil Co. v. Burks (Tex. Civ. App.) 39 S. W. 966.

■ The contract was clearly one within the powers of the corporation, had it been in existence when it was made. The corporation received in exchange for $20,000 of its capital stock property valued at $25,000 and obligated itself to pay the $5,000 note, made on its behalf, the proceeds of which had been used to discharge obligations existing against the property. Weeks and Earnshaw were personally liable to the corporation upon their unpaid stock subscriptions, and this liability was afterwards asserted by the trustee in bankruptcy. How this liability was thereafter adjusted does not concern us here. The bank was cognizant of all material facts regarding the transaction, and, if it made the contract as above outlined, we see no impediment to its validity, or to its becoming completely operative upon the corporation's coming into existence and assuming the obligations which the note imposed. The record presents no element of fraud or unfairness which would prevent effectiveness of the agreement to look to the corporation alone for payment of the note; and none is asserted.

Some authorities hold that agreement to look to the corporation alone need not be express, but may be implied from circumstances. 14 C. J. p. 270, notes 56 and 58.

Others go even further in holding that the fact alone that both parties knew that the contract was made for the benefit of the future corporation will relieve the promoter from personal liability. Carle v. Corhan, 127 Va. 223, 103 S. E. 699, 702; Marconi's Wireless Teleg. Co. v. Cross, 16 Haw. 390.

It is generally held that the promoter is personally liable if the corporation is not thereafter created, upon the theory of implied warranty that it will be brought into existence. See 31 Yale Law Journal, p. 1015.

Under special circumstances, however, it has been held (the cases are rare) that the

party making the contract incurred no personal liability even though the corporation was not thereafter created. Belding v. Vaughan, 108 Ark. 69, 157 S. W. 400; McQuiddy P. Co. v. Head, 7 Ala. App. 384, 62 So. 287; Weiss v. Baum, 218 App. Div. 83, 217 N. Y. S. 820; Strause v. Richmond W. Co., 109 Va. 724, 65 S. E. 659, 132 Am. St. Rep. 937; Wheeler v. Fradd (Eng.) 14 T. L. R. 302.

We are not concerned here with any of these holdings, since the contract for nonliability of Weeks, if it in fact existed, was an express one, and the corporation afterwards came into being as represented and as contemplated by the parties.

We do not believe the case at bar is brought within the invoked rule that parol evidence is not admissible to vary the terms of an unambiguous written contract. The note on its face did not purport to bind Weeks personally, but "Weeks Drug Store No. 4," whatever that term was employed to imply. If it was used as a trade-name, then it purported to bind the individual or individuals, sole, corporate, partnership or other, which the parties mutually intended it should describe. Clearly parol evidence was admissible to show such intention. The evidence negatives its employment as a tradename other than for the corporation then in course of formation. Weeks conducted no business under that name or to which that name could be appropriately applied, and this was the only instance in which he ever used it prior to the corporation's creation. Manifestly it could not be determined from the note itself who was intended to be bound, and therefore parol evidence was essential to show the real intention of the parties.

Appellee contends that since the corporation thereafter created was under the name of "Weeks Drug Store No. 4, Inc.," parol evidence was not admissible to show that this corporation was intended by use of the name "Weeks Drug Store No. 4." We do not think this contention has substantial merit. The question presented was the identity of the one intended to be bound, and this being once established a slight misnomer was immaterial. Carle v. Corhan, supra, is directly in point. There the difference in name used was between "American Theatre, Inc.," and "American Theatre Co., Inc." In disposing of the question the court quotes the following from Minor Lile on Private Corporations, p. 32: "If it can be determined by evidence aliunde what corporation is intended, the court will give effect to the instrument (grant, contract, will, etc.), regardless of the error in the name."

We do not believe that what transpired subsequently to the incorporation was sufficient in itself, and independently of the alleged nonliability agreement, to relieve Weeks of liability, if otherwise he would be held bound. Such subsequent transactions have, we think, only evidentiary bearing upon what the original agreement of the parties was.

The trial court's judgment is reversed, and the cause remanded.

Reversed and remanded.