J. D. CAVANESS, Appellant,

v.

GENERAL CORPORATION et al., Appellees,

No. 14786.

Court of Civil Appeals of Texas.

Dallas.

July 16, 1954.

Rehearing Denied Oct. 8, 1954.

Second Rehearing Denied Nov. 5, 1954.

Wm. Andress, Jr., Dallas, for appellant.

Carrington, Gowan, Johnson & Walker, John L. Hauer and. Spafford & Spafford, Dallas,. for appellees.

CRAMER, Justice.

Appellant Cavaness filed this action in district court against appellees General Corporation, a. Texas corporation, and the partners (nine) in the Southwest Company, a co-partnership, based. upon. a contract, the first four paragraphs of which are as follows:

"This agreement, made and entered into by and between The D-A-M Company, a Texas corporation, domiciled in Dallas, Dallas County, Texas, hereinafter referred to as licensor, and the General Corporation, a Texas corporation, domiciled in Dallas, Dallas County, Texas, hereinafter referred to as licensee: Witnesseth:

"Whereas, the said licensor, the D-A-M Company, is the owner of a certain invention covering a power driven mower, for which is filed application for letters of patent of the United States, under serial number 619460, filed on the 1st day of Oc-

tober, A.D. 1945, which application is now pending in the Patent Office of the United States Government and it is desirous of licensing the same upon the following terms and conditions throughout the entire world; and,

"Whereas, the said licensee is desirous of acquiring exclusive license to manufacture, sell and distribute said power driven mower under the said application and under any patent or patents which may hereafter be granted thereon, throughout the entire world, Now, Therefore:

"For and in consideration of the sum of one ($1.00) dollar paid by each party hereto to the other, in hand paid and acknowledged by the licensors and licensee, the parties to this agreement do hereby agree as follows:"

It was then provided that the licensor conveys the "full and exclusive license to manufacture and sell and distribute, and to license others for said purposes or otherwise as licensee may desire, to dispose of said power driven mower together with any improvements thereon, before and after said license may issue to the licensee, of any patent or patents issued thereon, throughout the entire world. No machine, however, shall be manufactured in any foreign country under this contract." The contract provided for a royalty ($1 per machine) to be paid to licensor at stated times; and for a minimum number of machines, 10,000 per year during the years 1947 and 1948; also provided that all improvements, changes, modifications or alterations in design in construction in the mower by licensee or its employees shall become the property of licensor; provided for the keeping of adequate records, etc., numerous general provisions, and also provided for a cancellation under certain circumstances, with a merger clause as follows: "This contract covers all the agreement between the parties hereto and no oral representations will be recognized." The contract was signed July 17, 1946 by the parties as follows:

"The D-A-M Company
"/s/ By J. D. Cavaness
"(J. D. Cavaness, President).
"Attest:
"_____
  "Secretary
                              Licensor
  "General Corporation
  "By J. W. Greenwood
  "(J. W. Greenwood, President)
"Attest:
"_____
  "Secretary"

The contract was acknowledged as follows:

"State of Texas, County of Dallas: Before me, the undersigned authority, on this day personally appeared J. D. Cavaness, President of The D-A-M Company, a corporation known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that the same was the act of the said The D-A-M Company, a corporation, and that he executed the same as the act of such corporation for the purposes and consideration therein expressed and in the capacity therein stated. Given under my hand and seal of office, this the 17th day of July A.D. 1946. Marguerite High, Notary Public, in and for Dallas County, Texas.

"State of Texas, County of Dallas: Before me, the undersigned authority, on this day personally appeared J. W. Greenwood, President of the General Corporation, a corporation, known to me to be the person and officer whose name is subscribed to the foregoing instrument, and acknowledged to me that the same was the act of the said the General Corporation, a corporation, and that he executed the same as the act of such corporation for the purposes and consideration therein expressed, and in the capacity therein stated. Given under my hand and seal of office this the 22nd day of July A.D. 1946. Marguerite High, Notary Public, in and for Dallas County, Texas."

It appears from the statement of facts that after two witnesses, to wit, appellant

Cavaness and appellee J. W. Greenwood, Sr., had testified and the application for patent on the power driven mower, the contract sued on, and the patent No. 2471367 issued to Cavaness had been introduced, the court, before the parties rested, withdrew the case from the jury and rendered judgment that appellant take nothing by his suit. From that judgment appellant has duly perfected this appeal and here briefs eight points of error.

Points 1 to 4 inclusive are in substance: (1) Cavaness as the organizer of a proposed corporation is personally bound by a contract made in its behalf; (2) this action can be brought by Cavaness as the true party in interest; (3) appellees as parties to a contract made with a nonexistent proposed corporation, with full knowledge that Cavaness who signed the contract and was the sole owner of the lawn mower, the patent, application, etc., "cannot first complain of such nonexistence upon their breach of the contract after operating under it for a year"; and (4) the nonexistence of a proposed corporation which is a party to a contract is no defense by the other party who had full knowledge of the facts at the time the contract was executed.

These points are collectively answered by appellees with two counter-points in substance: (1) It appearing from the written contract that Cavaness signed only as agent of the D-A-M Company, parol evidence was not admissible to show Cavaness intended it to be his personal contract, no fraud, mistake or other grounds for reformation being alleged; especially in view of the merger clause in the contract. (2) Had the situation been reversed, appellees could not have sued Cavaness personally on the contract because he was not a party to it, but could only have sued for a breach of his implied warranty that the D-A-M Company either existed or would be brought into existence; and in this case could not have sued Cavaness on any theory since the contract was in the name of and solely on the credit of the D-A-M Company.

From the above record it appears without dispute that Cavaness as a promoter of a corporation to be known as the D-A-M Company entered into an agreement solely as agent (President) of such proposed corporation, the D-A-M Corporation, with a then existing corporation (General Corporation) wherein the D-A-M Company as a corporation agreed as owner to license the General Corporation to manufacture a patented article under a patent owned by D-A-M Company, a corporation, if and when such patent should be issued.

Cavaness breached this contract to organize the proposed D-A-M Company as a corporation and now seeks to recover damages due under the licensing contract between General Corporation and the D-A-M Company in his own individual capacity for his own individual benefit.

The only question raised by the points is whether or not under such facts Cavaness can personally in his own name and for his sole individual benefit maintain this suit and recover, if he establishes the facts pled, the minimum royalty provided for in the contract. It is settled law in Texas that: "A promoter, though he purport to act on behalf of the projected corporation, and not for himself, cannot be treated as agent, because the nominal principal is not then in existence; and hence, where there is nothing more than a contract by a promoter, in which he undertakes to bind the future corporation, it is generally conceded that it cannot be enforced. Kelner v. Baxter, L.R. 2 C.P. 174; Melhado v. Railway Co., L.R. 9 C.P. 503. The promoters themselves are liable upon the contract, unless the person with whom they engage agrees to look to some other fund for payment. * * *" Weatherford, M. W. & N. W. Ry. Co. v. Granger, 86 Tex. 350, 24 S.W. 795, 796, opinion by Justice Gaines. Applying the reasoning there to the matter here, the contract here up until the corporation is organized cannot be enforced, and after organized, against the corporation only if the corporation, after it comes into existence, properly ratifies

and/or otherwise adopts its benefits. Here it is claimed by appellant that although he breached his contract to organize the D-A-M Company as a corporation, he nevertheless can take advantage of the later refusal of the General Corporation to deal with him individually and he personally can carry out the terms of the contract, and that the provisions of the contract do not bar such a construction as is placed upon it by him.

■ Under the record, however, we cannot agree with appellant. In our opinion he cannot now claim the benefit of the contract personally since he, Cavaness, by signing the contract as President of the D-A-M Company, a corporation, is estopped and barred from denying the existence of the corporation. The rule is correctly stated in 13 Am.Jur. 209, Corporations, sec. 65, as follows:

"In order for one to be estopped to deny the corporate existence of an organization, he must have contracted or dealt with it as a corporation. Such recognition is generally held to be shown by the use of a name usually importing a corporation, that is, naming an ideality, but disclosing that of no individual."

The note on Texas authorities under the above is as follows: "In Texas the rule seems to be that the mere designation in a contract of a body by a name appropriate to a corporation does not imply a corporation without some statement in the contract that the body so described is a corporation, within the rule that one contracting with a body described by a corporate name is estopped to deny its corporate existence. Holloway v. Memphis, E. P. & P. R. Co., 23 Tex. 465, 76 Am.Dec. 68; Empire Mills v. Alston Grocery Co., 4 Willson, Civ.Cas. Ct.App. §§ 221, 346, 15 S.W. 505, 12 L.R.A. 366. Annotation: 5 A.L.R. 1584."

■ We therefore hold that appellant cannot recover in this proceeding for the reason (1) that he breached the contract first by failing to secure the legal organization of the D-A-M Company as a Texas corporation; and (2) independently of such breach he, Cavaness, is estopped from personally denying in this suit the existence of the D-A-M Company as a legal corporation and from bringing this suit personally in his own name and for his own individual benefit.

Points 1 to 4 inclusive are overruled.

Points 5 to 8 inclusive are in substance: (5) Appellees demur to the evidence, waive all objections to the admissibility of appellant's testimony; and (6) admit as true such evidence and all inferences favorable to appellant which may reasonably be drawn therefrom; (7) since appellees' demurrer to the evidence should not have been offered or sustained prior to appellant's closing his direct evidence, it was necessary for appellees to agree to the allowance of a full bill of exceptions setting forth all the testimony and all the testimony he expected to produce; (8) appellees' said demurrer and the entry of judgment thereon waived all of appellees' defenses and authorized the court to enter judgment upon the record thereby authorizing this Court to enter judgment upon all evidence which would have been offered by the plaintiff below. These points are countered by two points in substance: (1) That the judgment as rendered and entered was a general judgment that Cavaness take nothing for the reason that it appeared to the court that he had no cause of action on the contract in question and the court was precluded from rendering and entering the judgment which he did; and (2) even if the judgment as entered had been one sustaining the demurrer to the evidence instead of the general judgment entered we could not now treat the demurrer as having been made to a record which did not exist at the time the demurrer would have been made had the written contract been in evidence instead of having been rejected and had the various so-called bills of exception, containing matters not even pleaded, been presented in the form of sworn testimony instead of in the unsworn and unsigned condition they now appear before this Court.

600

The record shows the court stated to the jury that he sustained a demurrer to the evidence and they should return to the central jury room and be discharged. The judgment entered recited that "Plaintiff commenced the introduction of his testimony and other evidence; and during the afternoon of July 28, 1953, the plaintiff offered in evidence the contract upon which his suit is based; and the court having examined the said contract and plaintiff's pleadings, and plaintiff's counsel having stated in open court that his only cause of action herein was based upon said written contract, and it appearing to the court therefrom that plaintiff has no cause of action upon which he can recover of defendants herein and that while the plaintiff was offering evidence and before he had rested the cause should be withdrawn from the jury and judgment entered for the defendants"; and directed that appellant take nothing against appellees.

The basis of these points is contained in four bills of exception. Each of such bills of exception, after reciting certain facts necessary to the bill, is as follows: "The foregoing bill of exception No. 1 having been reduced to writing by the attorney for said plaintiff and having been presented to the undersigned judge who tried said cause for allowance and signature within 50 days from entry of judgment and within the time required by law, and having been submitted to adverse counsel, and having been by me found to be correct, is hereby allowed, approved, and ordered filed by the Clerk of this Court as a part of the record in such cause this the 14th day of October, 1953 with the following qualifications"; to which the court before he signed such bill presented by appellant added the following notation: "The testimony set out in the foregoing bill of exception was not presented before me, and I do not certify that the witness would testify as stated therein."

Under such a record we cannot consider the evidence as quoted in the bills and not contained in the statement of facts since such evidence is not properly before us as part of the bill or the statement of

facts. The court's qualification not excepted to by appellant must be taken as correct. 3A Tex.Jur. 704, Appeal and Error, sec. 547.

Without a record of the tendered evidence properly before us under the certificate of the trial judge as having been offered by the witnesses in the presence of the judge as a part of their bill, we cannot consider it. Points 5 to 8 must be overruled.

Finding no reversible error in the record, the trial court's judgment is

Affirmed.

On Motion for Rehearing.

Rehearing denied.

DIXON, Chief Justice (dissenting in part).

I agree to the affirmance of the trial court's judgment, but not for the reasons given in our original opinion.

This is a suit instituted by appellant as plaintiff on a written contract. It is not a suit to cancel the contract for fraud, accident, or mistake. It is not a suit to reform the contract. It is not a suit for consequential damages for breach of the contract. As acknowledged by appellant, it is a suit *on the contract.*

In his second amended petition appellant alleged that on January 16, 1946 he individually was the owner of an invention covering a power mower. He further pled: "On July 17, 1946 the plaintiff in the name of said proposed corporation, entered into a written contract * * *." The D-A-M Company, the party actually named in the contract, was then nonexistent. It was only a proposed corporation which appellant intended to organize later. (In fact it never was organized.) Appellant alleged all these facts were well known to appellees.

Early in the trial of the case appellant offered the written contract in evidence. Appellees objected on the grounds that (1) there was nothing in the contract to indi-

cate that it had been entered into by appellant Cavaness individually in behalf of a proposed nonexistent corporation, the only named party on the one side being the D-A-M Company; and (2) any attempt of appellant Cavaness by parol testimony to vary the contractual capacity in which the parties executed the instrument would violate the parol evidence rule, since the contract is unambiguous, and also contains a "merger clause."

The court sustained appellees' objection and appellant was not allowed to introduce the written contract. I think the objection was good. And the proper rejection of the contract was of course fatal to appellant's recovery of judgment.

The contract itself is not ambiguous in its description of the contracting parties. On its face it clearly, expressly, and unqualifiedly names only the D-A-M Company on the one hand and appellee General Corporation on the other hand. Appellant Cavaness is not named as a party. Execution of the instrument was acknowledged before a notary public. Appellant acknowledged that he appeared and was known to be the president of the D-A-M Company, and that his name was signed and the contract executed as the act of the corporation. There is nothing in the writing to suggest that appellant was only acting as agent or promoter of a nonexistent proposed corporation. His allegation to that effect would have to be established if at all by parol testimony.

And such parol testimony would have to be introduced in the face of a paragraph in the contract commonly known as a "merger clause." Here it is: "This contract covers all the agreement between the parties hereto and no oral representations will be recognized."

The contract expressly refers to the D-A-M Company as Licensor; and it recites that Licensor is owner of the invention in question. By its terms Licensor sells, assigns, and conveys to appellees a license to manufacture, sell, and distribute mowing machines. A royalty of $2 per machine for each of the first 20,000 machines and of $1 for each machine thereafter manufactured, sold, or distributed is to be paid to Licensor, the money to be deposited quarterly in the Republic National Bank at Dallas in the name of Licensor. Licensor agrees to defend infringement suits and to hold appellees harmless from any damages by reason of said suits.

The contract further provides that even if appellees fail to manufacture, sell or distribute any machines in the years 1947 and 1948 they shall pay Licensor royalties for a minimum of 10,000 machines for each of said years—a total of $40,000. Appellees have never manufactured, sold, or distributed any machine but this paragraph in the contract is looked to by appellant to support his suit for $40,000.

In the absence of a proper legal explanation there was a fatal variance between appellant's pleading and his evidence. Appellant contends that he pled a proper legal explanation when he alleged that appellees knew that the corporation was nonexistent, that appellant was acting as promoter of a proposed corporation to which he intended to assign his rights as licensor, and that he, appellant, was really the principal party in interest. Further he contends he had a right to prove such allegations by parol testimony. I find myself unable to agree with appellant.

The very purpose in reducing contracts to writing is to avoid misunderstanding, to refresh recollection, and to make certain what was agreed to and who agreed to it. If parties take the precaution to write down the terms of their agreement and to acknowledge it before a notary public, as a general rule they ought not to be permitted to negative their writing by later saying that notwithstanding their written agreement they verbally agreed otherwise. What then would be the use of going to the trouble of preparing a written contract? I think the parol evidence rule is all the more applicable when, as in this case, the written contract contains a "merger clause" expressly declaring that the writing "covers *all* the agreement * * * and *no oral*

*representations will be recognized."* (Emphasis supplied.) See Heffron v. Pollard, 73 Tex. 96, 11 S.W. 165; Waggoner v. Magnolia Petroleum Co., Tex.Civ.App., 252 S.W. 865; Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97; Browning-Ferris Machinery Co. v. Thomson, Tex.Civ.App., 58 S.W.2d 183; Otis Elevator Co. v. Berry, 28 Cal.App.2d 430, 82 P.2d 704.

In my opinion the law covering the circumstances presented on this appeal is stated in Restatement of the Law of Agency, Section 326, Comment b: "* * * if it appears unambiguously in an integrated contract that the agent is not a party, parol evidence is not admissible to show the contrary intent, and * * * *this is so although the effect of the evidence is to show that the purported principal is nonexistent.* * * *" (Emphasis supplied.)

The case of Weeks v. San Angelo National Bank, Tex.Civ.App., 65 S.W.2d 348 (writ ref.), cited by appellant, does not seem to me to support appellant's contention. A promissory note was signed "Weeks Drug Store No. 4, by Jno. A. Weeks." Such signature was plainly ambiguous. On its face it did not indicate whether "Weeks Drug Store No. 4" was a corporation, a partnership, an association, or simply a trade name used by Jno. A. Weeks individually. The parol testimony did not contradict or vary from the terms of the written instrument. It merely explained which of several possible meanings was intended by the written words. Furthermore, there was no merger clause involved in the Weeks case.

Appellant cites a number of cases in which promoters who executed contracts in the name of nonexistent corporations have been held liable as defendants. The inference is that if a promoter incurs liability because of his executing such a contract, the rule must be that he has rights under the contract which he is entitled to assert as plaintiff. However, in many cases the inference is not correct.

It is generally held that such a promoter is liable as a defendant, not on the contract, but for breach of warranty, or deceit in connection with his execution of the contract in the name of a nonexistent corporation. In Weeks v. San Angelo National Bank, Tex.Civ.App., 65 S.W.2d 348, at page 349 (writ ref.), already mentioned as a case cited by appellant, it is said, "It is generally held that the promoter is personally liable if the corporation is not thereafter created, upon the theory of implied warranty that it will be brought into existence." See also Weiss v. Baum, 218 App.Div. 83, 217 N.Y.S. 820; and Farmers' Co-Op. Trust Co. v. Floyd, 47 Ohio St. 525, 26 N.E. 110, 12 L.R.A. 346. For cases holding that one assuming without authority to act as agent for a purported principal may be sued for breach of warranty, or deceit, but not on the contract, see Heffron v. Pollard, 73 Tex. 96, 11 S.W. 165; and First State Bank of Roby v. Hilbun, Tex.Civ.App., 61 S.W.2d 521. In the last named case, 61 S.W.2d at pages 521 and 522, Chief Justice Hickman, then on the Eastland Court of Civil Appeals, said: "A suit to enforce such liability should not be brought upon the contract itself, but should be for breach of warranty or deceit. Plaintiff's suit was based upon the contract itself, which did not purport to be the contract of the defendant, and clearly it was not entitled to a judgment thereon." In such cases, though a promoter might be liable for breach of warranty or deceit, it would certainly not follow that he had rights *on the contract* which he was entitled to assert as plaintiff.

Furthermore, it has been held that a promoter who contracts in the name of a nonexistent, proposed corporation is not liable at all when the other contracting party had knowledge, as appellant says appellees had here, that the purported principal was a nonexistent, proposed corporation. 126 A.L.R. 118, and cases there cited.

Appellant's strongest Texas case seems to be Ennis Cotton-Oil Co. v. Burks, 39 S.W. 966 (no writ history). The facts were that one John Guitar represented

himself as agent for a corporation which did not exist but which was later organized, and which then adopted the contract made by Guitar. Guitar was held liable for $41.04, the amount of the indebtedness incurred prior to the adoption of the contract by the corporation. The opinion declares that a person who contracts as agent, without authority, or without a principal, is held to be a principal himself with all the rights and liabilities of a principal.

But I do not believe that the Ennis Cotton-Oil case should control our decision here for several reasons. For one thing, the given facts are different. For another thing, some material facts are not given at all. For example, the opinion does not disclose (1) whether the contract was in writing, (2) whether it contained a "merger clause," (3) whether it showed on its face that the corporation was only a nonexistent, proposed corporation, (4) whether the language of the contract was ambiguous, or (5) whether the other contracting party knew there was no such corporation in existence.

Appellant also cites Abbott v. Hapgood, 150 Mass. 248, 22 N.E. 907, 5 L.R.A. 586. But the cited case does not discuss application of the parol evidence rule, nor, so far as I can tell, did the contract contain a "merger clause." Furthermore, it allowed only consequential damages resulting from reliance on the contract, not damages measured by the contract's provisions.

In his third point on appeal appellant takes the position that appellees cannot first complain of the nonexistence of the corporation after operating under the contract for one year. I do not think appellant may properly rely on such grounds on this appeal. In the first place he did not plead that appellees operated under the contract for one year, or any other length of time. In the second place I seriously doubt that there is any evidence, or any proposed evidence in the bills of exception to support such allegation if it had been pled. On the contrary the evidence and the proposed evidence tend to establish that appellees actually did nothing by way of performance of the contract because they were unable to buy motors at a suitably low price. Appellant's first four points were properly overruled.

Appellant in his last four points complains of events which occurred subsequent to the rejection in evidence of the contract in question. While appellant as plaintiff was still trying to present testimony, appellees interposed a demurrer to the evidence. Appellant informed the court that his witnesses were ready to testify and also explained to the court what the purpose and the substantial content of their testimony would be. Nevertheless the court announced that he would sustain the demurrer to the evidence and render judgment for appellees. The jury was thereupon discharged and the trial came to an abrupt end. The court then said to appellant's counsel: *"You can have your full bill, Mr. Andress, as to any matters you desire to include in it."* (Emphasis supplied.)

Thereafter appellant prepared and submitted bills of exception showing the parol testimony he would have offered if his witnesses had been permitted to testify. The trial court at first refused to approve and sign the bills, but later signed them, though he qualified them by saying the matters and things set out in the bills had not been presented before him, so he did not certify that the witnesses would have testified as stated in the bills. Appellant did not except to these qualifications.

Appellees admit that it was error for the court to sustain their demurrer to the evidence, but say that under the circumstances it was harmless error. As to the bills of exception, appellees say that in view of appellant's failure to except to the court's qualifications, the bills are not properly before this Court for consideration.

I think appellant's bills of exception are properly before us for consideration. Since appellant did not except to the court's qualifications of the bills, we must accept the qualifications as true. 3-A

Tex.Jur. 705. But even so, the qualifications do not under the circumstances here presented destroy the validity of the bills.

One way to make out bills of exception when testimony has been excluded is to let the witnesses testify in the presence of the court out of the hearing of the jury. The purpose is to apprise the court what the witnesses, if permitted, would testify, so that the court may weigh the testimony's admissibility, materiality and purpose and may understand the scope and effect of his ruling. However, that is not the only way the purpose may be served, and it is not the only proper way that bills of exception may be made out. When the court is informed by counsel what the substance of the testimony will be, what its purpose is, how it bears on the issues in the case, and it is evident from the remarks of the attorneys and the court and other attendant circumstances that the court, under the view it takes of the issues involved, would not admit the testimony anyway, it is permissible to complete the bill without having the witnesses on the stand before the judge to make out the bills. Gray v. Mills, Tex.Civ.App., 206 S.W.2d 278, affirmed 147 Tex. 33, 210 S.W.2d 985; 31 Texas Law Review 128, at pp. 129 and 130 (McCormick).

As I view the circumstances in this case, it was not necessary for appellant to present the witnesses in court to give their testimony in order to make out his bills of exception. It follows that though the court's qualification is true, appellant's bills are properly part of the record before us, and appellant's last four points are entitled to be considered on their merits.

However, I think appellant's last four points must be overruled. In my opinion our action in overruling appellant's first four points is decisive of this appeal, regardless of any action we might take on his last four points. The latter points under the circumstances become immaterial and whatever errors the court may have committed, as contended in said points, must be regarded as harmless. The testimony which appellant proposed to introduce could not have furnished a basis for judgment in his favor. The judgment as I see it was correct and ought not to be reversed because of the procedural error. 3-B Tex.Jur. 285.

I do not believe the trial court's judgment should be affirmed on the grounds of estoppel, as stated in the majority opinion. In the first place, estoppel would have been available as a defense to appellees only if it had been pled and evidence offered to support it. Neither at the trial nor on this appeal, by pleading or by evidence, have appellees grounded their defense on estoppel. In my opinion, there is no basis in the record for a conclusion that appellees should prevail on that theory.

I concur in overruling appellant's motion for rehearing.

YOUNG, Justice.

I am in accord with the conclusion of my associates that appellees' judgment herein should be affirmed.