**ALOE LIMITED, INC., d/b/a Thoeni Aloe Vera, Appellant,**

v.

**Claud A. KOCH and Don Czeschin, Appellees.**

No. 13–86–435–CV.

Court of Appeals of Texas, Corpus Christi.

June 25, 1987.

---

Richard D. Schell, Harlingen, for appellant.

Glen A. Barnard, Harlingen, for appellees.

Before NYE, C.J., and UTTER and SEERDEN, JJ.

## OPINION

UTTER, Justice.

This is an appeal from a take-nothing judgment in a suit on a sworn account. The case was tried before the court. Nei-

ther appellee has filed a brief in this Court. We affirm the judgment of the trial court.

Appellees decided to go into the business of processing aloe vera plant leaves. They decided to form a corporation under the name Quality Aloe Vera Labs, Inc. The company was not incorporated until June 3, 1983. Appellant is a grower and supplier of aloe vera leaves.

On April 25, 1983, appellee Czeschin, on behalf of Quality, entered into an agreement with appellant whereby appellant agreed to sell and Quality agreed to buy aloe vera leaves at a set price. The agreement was to be in effect from March 15, 1983, until March 14, 1984.

The agreement is as follows:

The following is an agreement between Thoeni Aloe Vera, hereafter referred to as THOENI, and Quality Aloe Vera Labs, Inc., hereafter referred to as QUALITY.

THOENI agrees to supply Aloe Vera leaves to QUALITY. (Unless prohibited by acts of God.)

QUALITY agrees to buy all of its Aloe leaves from THOENI.

The price for said leaves shall be eight cents per pound for the first one million pounds. Thereafter the price shall be seven cents per pound. These prices are F.O.B. QUALITY'S plant in Santa Rosa, Texas. Terms are Net 30 days.

Each load will be weighed and ticket given to QUALITY.

QUALITY agrees to give THOENI a minimum of 48 hours notice as to their Aloe leaf requirements.

This agreement shall be in effect from March 15, 1983, to March 14, 1984.

Exception: A periodic load (biweekly) from another supplier

25 April 1983
Date
[Theoni Aloe Vera]

[Don Czeschin's signature]
Quality Aloe Vera Labs, Inc.
by Don Czeschin
[Bernard Thoeni's signature]

**366**

Thoeni Aloe Vera
by Bernard Thoeni

From April 15, 1983, until August 20, 1983, Quality placed and paid for ten orders for aloe vera leaves. Thereafter, Quality placed ten more orders from August until December, but failed to pay for any of them. The total outstanding balance is approximately $30,386.92. Quality is in bankruptcy.

Appellant brought suit on a sworn account, contending that the appellees are individually liable. In its pleadings, appellant urged theories of recovery based upon "alter ego" and "piercing the corporate veil." At trial, appellant presented evidence on and argued to the court its theory of "promoter liability." No objections were raised by either appellee; therefore, the promoter liability issue was tried by consent. See Bell v. Meeks, 725 S.W.2d 179 (Tex.1987); Tex.R.Civ.P. 67.

By its first point of error, appellant contends that the trial court erred in determining that appellees were not individually liable. In its brief, appellant forsakes its alter ego and piercing the corporate veil theories and argues that "[t]he facts in the case at bar most closely fit into that body of corporate law known as promoter liability for pre-incorporation contracts."

Appellees were the promoters of Quality, since they discovered the business opportunity, investigated its economic feasibility, and assembled the necessary resources, property and personnel. H.G. Henn, *Law of Corporations*, 171 (1970).

■ As a general rule, where a promoter enters into a contract in the name of a corporation which has not yet been formed, he is personally liable on the contract absent an agreement with the contracting party that the promoter is not liable. *Bibbee v. Root Glass Co.*, 96 S.W.2d 975 (Tex.Comm'n App.1936, opinion adopted). However, there is no personal liability where the contract is made in the name and solely on the credit of the proposed corporation and the contracting party knows that the corporation does not yet exist. *Schwedtman v. Burns*, 11 S.W.2d 348 (Tex.Civ.App.—El Paso 1928, no writ).

*See also Weatherford, M.W. & N.W. Railway Co. v. Granger*, 86 Tex. 350, 24 S.W. 795 (1894). Whether a promoter is personally liable on a pre-incorporation contract depends on the intention of the contracting parties. *See Weeks v. San Angelo National Bank*, 65 S.W.2d 348 (Tex.Civ.App.—Austin 1933, writ ref'd).

Evidence was presented at trial regarding the intention of the parties. No parol evidence objections were raised by either side.

Richard Benson, president of appellant, admitted that he knew that Quality Aloe Vera Labs, Inc. did not yet exist as a corporation at the time the agreement was signed. However, he stated that "they were not a corporation at the time, and so I was looking to Don [Czeschin] and Don's word that I would get paid." He also testified that he was relying on the financial strength of Claud Koch and his company, Cher Beli.

Mr. Czeschin testified that he and Mr. Benson never discussed the issue of his personal liability. However, he testified that it was never his intention to be personally liable, stating, "I explained that to everyone, that I could not personally stand; that the corporation would be liable for the debts of the business."

■ The written agreement upon its face supports Mr. Czeschin's contention in that it states that it is between Thoeni Aloe Vera and Quality Aloe Vera Labs, Inc. Furthermore, it is signed "Quality Aloe Vera Labs, Inc. by Don Czeschin."

The trial court found that:

Czeschin, on behalf of Quality Aloe Vera Labs, Inc., represented to the plaintiff, through its representatives, prior to the execution of the contract in question that Quality Aloe Vera Labs, Inc. would be responsible under the terms of the contract for payment for aloe vera leaves delivered and that none of the officers or shareholders of Quality Aloe Vera Labs, Inc. would be liable in their individual capacities to the plaintiff for the obligations of Quality Aloe Vera Labs [,Inc.].

The trial court, as the trier of fact, assesses the credibility of the witnesses and the weight to be given their testimony, and can accept all, part, or none of the testimony, or may make its own deductions from the evidence. *Hubler v. Oshman*, 700 S.W.2d 694 (Tex.App.—Corpus Christi 1985, no writ). The evidence outlined above is sufficient to uphold the trial court's finding.

■ It has also been held that a contract made by a promoter upon express agreement that the corporation alone is to be bound and that no personal liability is to exist against the promoter is valid. *Weeks v. San Angelo National Bank*, 65 S.W.2d at 349. A subsequent adoption of the contract by the corporation will relieve the promoter of personal liability. *Id.*

In explaining how the promoter is relieved of liability on the contract, the *Weeks* Court reasoned that it seemed in harmony with the intention of the parties to presume that "when the corporation assents to the contract, it assents to take the place of the promoter—a change of parties to which the other side of the contract assented in advance. There would then be a novation which would discharge the promoter at the same time the corporation assumed the obligation." *Id.*

Mr. Czeschin testified that Quality accepted the "benefits" and the "burdens" of the contract. He also testified that the terms of the agreement were discussed among the officers of Quality and they "proceeded on with using Thoeni Aloe Vera as a supplier" as a result of the discussions. It is also significant to note that all ten invoices which were sued upon in this case were generated approximately two months *after* Quality was incorporated and is deemed to have adopted the contract. Thus, this is not a situation where the corporation assumes a pre-incorporation indebtedness; but rather, is a situation where the corporation incurred a debt after it has been legally incorporated. This evidence is sufficient to support the trial court's finding that "[a]ll actions taken by Quality Aloe Vera Labs, Inc., including the contract of April 25, 1983, were approved and ratified by its Board of Directors." Therefore, the breach was solely that of the corporation to which the promoters were not personally liable. Appellant's first point of error is overruled.

■ By its second point, appellant contends that the trial court erred in "refusing to consider any evidence relating to the appellees' violation of Tex.Rev.Civ.Stat. Ann. art. 1302–2.02 [ (Vernon 1980) ]." Article 1302–2.02 provides that when a business desires to incorporate without changing its name, it must give notice of its intention to become incorporated in a newspaper for four consecutive weeks. Until this notice is published, "no change shall take place in the liability of such firm or the members thereof to those dealing with the firm or its members."

Appellant contends that since it is undisputed that Quality did not publish any notice of its intent to incorporate, then appellees are individually liable.

The trial court refused to consider evidence on violation of article 1302–2.02 because appellant lacked pleadings alleging such a violation. No trial amendment was sought. The pleadings in fact do not allege a violation of article 1302–2.02 and appellant's allegation that appellees "completely failed to observe any corporate formalities" is much too general. This allegation was made in conjunction with appellant's alter ego theory and cannot, even liberally construing the pleadings, be interpreted to allege a violation of article 1302–2.02. Appellant's second point is overruled.

The judgment of the trial court is AFFIRMED.