NO. 07-01-0315-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

APRIL 8, 2002

_____

BOB YARI, INDIVIDUALLY, AND D/B/A PERSICO, INC.,
PERSICO, INC., A TEXAS CORPORATION, AND YARICO,
INC., A TEXAS CORPORATION, APPELLANTS

V.

LIGIA REVUELTA GILES AND LRG ENTERPRISES, INC., APPELLEES

_____

FROM THE 127TH DISTRICT COURT OF HARRIS COUNTY;

NO. 199422727; HONORABLE SHAROLYN WOOD, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

This appeal arises from a commercial landlord-tenant dispute concerning the tenant's right to maintain a particular sign over the leased premises. After a bench trial and judgment in favor of the tenant, and reversal on appeal, the case was retried before a jury. In conformity with the jury's verdict, the trial court rendered judgment for the tenant

for $118,613.27, together with attorneys fees in excess of $100,000. The landlord, Bob Yari (Yari) and Persico, Inc., (Persico) now present ten issues in challenge of the trial court's judgment concerning the sufficiency of the evidence, proper construction of the lease, evidentiary rulings, attorneys fees, and discovery sanctions. We affirm.

Proper consideration of the issues raised in this appeal requires a somewhat detailed recitation of the facts giving rise to the dispute. About 1989, appellant Yari undertook to build a commercial building to house retail stores on Westheimer Street in Houston. Yari solicited appellee Ligia Revuelta Giles as a tenant in that building. On August 25, 1989, Yari and Giles signed a lease covering 1,000 square feet of the property. The lease recited that it was between Persico, Inc., as landlord and Giles and LRG Enterprises, Inc. (LRG), as tenant. However, Persico was not incorporated until November 3, 1989. The lease required the landlord's approval of any sign placed on the building. An amendment to the lease executed November 26, 1989, provided for rent increases based on a consumer price index. The building was completed and the three-year lease term began in June 1990.

The shopping center is designed in an "L" shape with the storefronts facing the interior of the "L." Each wing of the structure has a covered walkway extending several feet out from the front of the building and signs for tenants in those wings are located on the fascia of this walkway. The walkway covers do not extend to the interior corner of the building. A second fascia, flush with the main structure, rises above the interior corner and

2

the adjacent storefronts on each side. Videoland, which Persico describes as an "anchor" tenant, occupies the space at this intersection. Giles's restaurant occupied the space adjoining Videoland on the left. The sign for Videoland is at the top of the fascia at the intersection of the two wings and faces directly toward the center of the parking lot, at a 45- degree angle from each wing. If a line were drawn extending the common wall between the spaces leased by Giles and Videoland, the Videoland sign would extend beyond that line. This sign also extended above the building fascia.

Giles's request in September 1990 for a sign was not approved. Another request was approved by Persico on October 12, 1990. This sign was to be 18 feet long and was to run "exactly along edge of wall - none above." When the sign was fabricated and delivered, it was initially installed with the top even with the fascia. Because the sign was largely obstructed by the covered walkway, Giles requested that it be moved up one foot. The sign was placed partially above the fascia, to the left, but slightly lower than the Videoland sign.

On November 5, 1990, Persico, acting through its property management company, demanded removal of the sign, stating it violated the lease. On January 24, 1991, Giles demanded removal of the Videoland sign because it "is encroaching on [her leasehold] by approximately six feet." In a March 1991 letter, an attorney for Giles wrote to Yarico, Inc. (Yarico) and BMS Management requesting that the covered walkway be extended in front of her restaurant so that a sign could be placed on the front of that walkway. Appellants

3

declined this request.  On April 5, 1991, appellant demanded the removal of Giles's sign and, when it was not removed, had it removed and demanded payment of $200.  Giles abandoned the property in April 1991.

After both parties filed suit in county court, the actions were consolidated in the 127th District Court.  In that action, Giles and LRG were the plaintiffs and Yari, Persico, and Yarico were defendants.  Giles's petition alleged appellants breached the lease "by failing and refusing to consider or approve any sign plans presented by [her]" and by failing to remove unauthorized signs which encroached on her leasehold.  Yari answered asserting he was not liable in the capacity in which he was sued because his participation was only as president of Persico.  Yarico made a similar assertion, claiming it was not a party to the lease agreement.  All three defendants also asserted several facts and claims labeled affirmative defenses.

After a bench trial, the court rendered judgment for appellees for approximately $56,000 in actual damages and $22,000 in attorneys fees.  The judgment was against Yari individually and d/b/a Persico and Yarico.  Yari appealed and, in an opinion issued April 1, 1999, the First Court of Appeals reversed the trial court's judgment on the basis that the discovery sanctions were improperly imposed.  It remanded the case for a new trial.

The second trial was to a jury in March 2000.  The jury found the landlord failed to allow Giles a business sign and that $59,428.75 would fairly and reasonably compensate her.  It denied any recovery for lost profits from 1990 through 1993.  The issue of attorneys

fees was separately tried to the court. The court rendered judgment for Giles for $59,184.52 in actual damages and $108,000 in attorneys fees through trial, and additional amounts of $30,000 on appeal to this court, $5,000 if a petition for review is filed in the supreme court, $15,000 if a petition is granted and $50,000 on writ of certiorari to the United States Supreme Court. The judgment was signed March 27, 2001, and after a motion for new trial, Yari and Persico timely filed a notice of appeal.

We recognize that the trial court's judgment makes no express disposition of the claims against Persico and Yarico. It did, however, contain a "Mother Hubbard" clause stating that all relief not expressly granted was denied. Because the judgment was rendered after a conventional trial on the merits, we presume that it disposed of all parties and claims and is appealable. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 198-99 (Tex. 2001); *North East Independent School Dist. v. Aldridge*, 400 S.W.2d 893, 895 (Tex. 1966).[1]

Appellants' first issue contends there is no evidence that they breached the lease. Giles's breach of contract claim was based on Yari's failure and refusal to consider and approve of the sign plans and the failure to remove signs which she claimed encroached on her leased space. Yari argues there is no evidence that the lease required them to consider and approve the sign plans. In reviewing a no-evidence point, we must examine the record in the light most favorable to the finding to determine if there is any probative

[1]Giles does not challenge Persico's standing to prosecute this appeal because the judgment does not expressly dispose of the claims against Persico. For simplicity we refer to appellants as Yari.

5

evidence, or reasonable inferences therefrom, which supports the finding, and we must disregard all evidence or reasonable inferences therefrom to the contrary. *Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co.*, 766 S.W.2d 264, 276 (Tex.App.--Amarillo 1988, writ denied). Giles's breach claim was based on section 14.3 of the lease, which provides that the "landlord shall not be in default unless landlord fails to perform obligations required of landlord within a reasonable time, but in no event later than thirty days after written notice by tenant." Yari contends "the lease imposed no obligations whatsoever on the landlord." If the landlord truly had no obligations under the lease, section 14.3 would be unnecessary. Moreover, a total absence of obligations on the landlord would make the contract unenforceable for lack of consideration.

Section 7.5 of the lease governed tenant signs and provided, "[t]enant shall not place or affix any signs or other objects upon or to the roof or exterior walls of the premises . . . without the prior written consent of landlord." The lease also provided that the property was to be used for a retail store. There was testimony that a sign is necessary to the success of a business of this type. Taken as a whole, the contract clearly contemplated that tenants were to have signs, otherwise the phrase "without the prior written consent of the landlord" would serve no purpose. The effect of section 7.5 was to reserve to appellants the right to approve those signs. Where a lease requires a tenant to seek a landlord's approval, the landlord's duty to consider that request is necessarily implied. Section 14.3 affirmatively required the determination to be made in a reasonable time.

6

Although it is undisputed that appellants gave written approval for a sign, it is also undisputed that they removed the sign that was constructed pursuant to those plans because it was not installed in the position specified in the plans. Because there was evidence that the sign would be wholly ineffective if installed where demanded by the landlord, a rational trier of fact could find this to be some evidence that appellants breached their obligations under the lease by effectively denying appellees the ability to have a sign over the leased space.

In their second issue, appellants contend the trial court erred in instructing the jury that Giles "was allowed a business sign that complied with the Landlords' approval of October 12, 1990," because that statement does not appear anywhere in the lease. Appellants argue there were no pleadings or evidence to support this instruction and the court improperly implied an additional provision into the unambiguous agreement. As noted above, section 7.5 simply reserved to appellants the right to approve any sign to be erected by a tenant. It did not bar the use of signs by tenants but, rather supports the conclusion that tenants would have some type of sign. The evidence is undisputed that appellants approved a plan for a sign on October 12, 1990. The application of the lease terms to the undisputed sign plan approval made the statement in the disputed instruction true as a matter of law. Because the undisputed evidence supports such a determination, the trial court's instruction that Giles was allowed a business sign in compliance with the approval was proper.

7

Appellants also contend the instruction was not raised by the pleadings as required by Rule 278.  The question submitted to the jury was whether "the landlord failed to allow the tenant a business sign."  This issue was the core complaint of appellees' petition.  They alleged that appellants breached the lease by failing to approve a business sign.  A petition need not allege each supporting fact, only give fair notice of the claims asserted.  Tex. R. Civ. P. 45.  The evidence of the terms of the contract and October 12 written approval meet the requirements of Rule 278.  We overrule appellants' second issue.

Appellants' third issue contends there is no evidence to support the jury's answer that they did not allow Giles a business sign that complied with the approval.  In support, it cites the testimony of Robert Tanner that the sign fit where it was intended on the approved plan.  Appellants characterize Tanner as "an unbiased witness with no interest in this lawsuit."  However, the record clearly shows that at the time of the events giving rise to this litigation, Tanner was the property manager hired by Yari or Persico, and the conduct of the management company during the origin of this dispute formed part of the basis of Giles's theory of liability.  Consequently, Tanner, although not a party to the litigation, was defending his own conduct at trial and was not an unbiased witness.

Appellants also assert that "the sign stayed on the roof until Giles abandoned the premises."  The record reference given does not support this statement.  Indeed, the statement is directly controverted by Giles's testimony:

Q:  Approximately how long after the removal of the sign did you move out?

8

A: How many days?  I don't recall but it was very – immediately almost.

Q: What was the reason that you moved out?

A: Because they didn't  – I didn't have a sign . . . .

There was also evidence that had the sign been placed below the top of the fascia, it would have been largely obstructed.  A rational factfinder could find that by only allowing appellees to place a sign in that position, appellants effectively denied appellees a sign. We overrule appellants' third issue.

In their fourth issue, appellants assign error to the rendition of judgment against Yari individually and d/b/a Persico, Inc., rather than the corporate entity Persico, Inc., who they claim was the true landlord.  Their claim is primarily based on the fact that Persico was the party named on the face of the written lease and claim there was no evidence of a contract between Giles and Yari.  We disagree.

Appellants do not dispute that Giles was a party to the lease or that Yari signed as or for the landlord.  Nor do they dispute the fact that Persico was not incorporated when the lease was executed.  The evidence also showed that Yari was the owner of the real property which was the subject of the lease.  The rule is well-established in Texas that a contract made by the promoter of a corporation before the corporate existence does not become a contract of the corporation when formed.  *Aloe Ltd., Inc. v. Koch*, 733 S.W.2d 364, 366 (Tex.App.--Corpus Christi 1987, no writ); *Gutherie v. Country Club Estates, Co.*,

9

26 S.W.2d 403, 404 (Tex.Civ.App.–Austin 1930, no writ).[2] The promoter is not liable where the other party knows the corporation does not yet exist. *Aloe*, 733 S.W.2d at 366. Appellants presented no evidence that appellees knew Persico was not a corporation at the time the lease was executed. Therefore, the rule stated in *Aloe*, making promoters such as Yari personally liable is applicable. Although appellees did not specifically allege promoter liability in its petition, the issue was fully litigated without objection to the lack of supporting pleadings, making the rule of trial by consent applicable. Tex. R. Civ. P. 67.

Appellants also argue that Yari is not liable on the lease because Giles executed an amended lease on November 28, 1989, after Persico was formed. However, at that time, Yari still owned the property and did not convey it to Persico until the following January. Because Persico did not own the real property, it could not grant a leasehold to Giles.

Appellants next argue the judgment was improper because section 16.2 of the lease prevented Giles from looking to any property beyond the real property, which was the subject of the lease to execute on any judgment. Assuming, without deciding, that this clause is effective, any limitations on Giles's ability to execute on a judgment does not make rendition of that judgment error. Appellants cite *Oxford Mall Co. v. K & B Mississippi Corp.*, 737 F.Supp. 962 (S.D. Miss. 1990), which considered a similar clause. That case

---

[2]This rule exists independent of Tex. Rev. Civ. Stat. Ann. art. 1302-2.02, which is the primary focus of appellants' argument. It is likewise independent of article 2.21 of the Business Corporation Act (Vernon Supp. 2002), which concerns the liability of shareholders, not promoters.

is distinguishable because it was governed by and decided on the Federal Rule of Civil Procedure permitting motions to dismiss for failure to state a claim. Because those rules are inapplicable in this proceeding, we overrule appellants' fourth point.

Appellants' fifth point is based on the trial court's decision to allow Giles to present evidence of her attorneys fees when she had not properly supplemented discovery responses. Giles responds that the discovery request at issue was filed in the prior county court proceeding on April 14, 1994. Because the two county court proceedings were dismissed to allow the action to be refiled in district court on May 13, 1994, Giles contends the prior discovery request did not survive the dismissal. Without citation to the record, appellants assert they served a second request for disclosure, including identification of experts, on March 14, 2000. When the issue of attorneys fees was tried separately to the court on March 8, 2001, appellants objected to any testimony of attorneys fees above the approximately $2,200 provided in the response to discovery in the county court. The court declined to exclude the testimony of additional fees.

In a May 1, 2000 motion to exclude Giles's experts, appellants cited the trial court's February 22, 2000 docket control order setting April 1, 2000, as the deadline for designation of expert witnesses in conformity with Rule of Civil Procedure 194.2(f). The only designation which appears in the record is dated February 9, 1994, while the dispute was before the county court, and lists Giles's attorney as an expert on attorneys fees. The trial court declined to rule on this motion. We need not further address this motion

because it was filed after the bench trial on attorneys fees and concerned the designation of experts on economic losses. Likewise, any failure to respond to the March 14 discovery cannot show reversible error because that discovery request does not appear in this record and it was also made after the issue of attorneys fees was tried. The absence of a timely objection or request waives any error. Tex. R. App. P. 33.1(a)(1).

With regard to Giles's failure to supplement the 1994 discovery answer, Yari does not cite any authority supporting his contention that dismissal of the county court actions terminated any duty to supplement. The argument does find some support by analogy in *Aetna Casualty v. Specia*, 849 S.W.2d 805 (Tex. 1993), where the court held that a discovery sanction for failure to supplement answers did not survive a nonsuit. *Id.* at 807. Under the record before us, we cannot say the trial court abused its discretion by overruling appellants' objection to the testimony of Giles's attorney on attorneys fees. We overrule their fifth issue.

Appellants' sixth point alleges Giles failed to establish entitlement to attorneys fees by statute or contract. Chapter 38 of the Texas Civil Practice & Remedies Code provides for the recovery of attorneys fees on successful prosecution of several types of claims, including contract claims. Section 38.001 (Vernon 1997). Section 38.002 establishes three prerequisites to recover attorneys fees: 1) that the party be represented by an attorney; 2) that they present the claim to the opposing party; and 3) that payment of the claim was not tendered before the 30th day after presentation of the claim. Appellants'

argue that Giles failed to establish she presented the claim to them as required, and therefore is not entitled to attorneys fees under Chapter 38. In response, Giles cites testimony and letters introduced in which she asserted that appellants' conduct was in violation of the lease agreement. It is well established that no particular form of presentment is required to meet the requirements of section 38.02. *Whitehead v. State Farm Mut. Auto. Ins. Co.*, 952 S.W.2d 79, 89 (Tex.App.--Texarkana 1997), *rev'd on other grounds*, 988 S.W.2d 744 (Tex. 1999). The record supports a finding that Giles presented her claim under the contract.

The only provision in the lease agreement for recovery of attorneys fees appears in section 16.15. It allows for the recovery of attorneys fees if either party "brings an action to enforce the terms hereof or declare rights hereunder." Arguing that Giles's claims were for recovery of damages rather than specific performance or declaratory judgment, Yari claims this provision is inapplicable. We disagree. The action was brought to declare rights under the agreement. The fact that Giles also sought damages does not alter that. We overrule appellants' sixth issue.

In their seventh issue, appellants assign error to the trial court's imposition of a discovery sanction for abuses alleged to have occurred in 1994, prior to the first trial of the case. Before the first trial, Giles sought the exclusion of Yari's testimony as a sanction for discovery abuse. The trial court did not rule on the request until the trial was well underway. Giles did not object to the court's failure to rule before trial. On appeal, the

13

First Court of Appeals found Giles waived the right to request sanctions by failing to obtain a ruling, or object to the failure to rule, before trial. *Yari v. Giles*, No. 01-95-0570-CV (Tex.App.--Houston [1st Dist.] October 29, 1995, no writ).

At a hearing before the second trial, Yari's counsel raised the issue of discovery sanctions. The court recounted its recollection of the events leading to the original discovery sanctions, including Yari's failure to appear at several scheduled depositions and the court's postponement of sanctions to give him an opportunity to give his deposition. At Yari's request, the court also limited the deposition to two hours. After reading the transcript of the deposition, the court described it as "a remarkable piece of abuse of the judicial process" because of the "obstructionism that was evident in [it]."

The trial court found the opinion reversing its original judgment was based on the failure to give Yari adequate time to secure another witness, not that the sanction was improper. The court also opined the appellate judgment did not reverse her discovery sanction order and that order was still in effect, stating that the five years from the original trial gave Yari adequate time to secure another witness and "if the defendant here today was thinking that perhaps that prior ruling had been set aside by the appellate court, let me know." She also expressly authorized Yari to substitute another witness on the matters that would have been addressed by his testimony. Yari made no objection to the court's assertion that the judgment on original appeal did not vacate her ruling or declare it invalid. The trial court then overruled Yari's objection that Giles had waived the right to seek

14

sanctions by failing to seek sanctions after the original judgment was reversed. Yari did not seek a continuance to secure another witness.

We need not determine whether the trial court correctly interpreted the First Court of Appeals' judgment because Yari's failure to object to that interpretation in response to the trial court's express invitation waived any error that might have existed on that issue. We overrule appellants' seventh issue.

Appellants' eighth issue questions the sufficiency of the evidence supporting the jury's answer of $59,428.78 in actual damages. They also argue there was no evidence that any damages were the result of their breach of the lease. Giles presented the testimony of her accountant Patrick Levantino. He testified that Giles had spent $41,186 in improvements to the property, $7,263 on equipment, $7,614 in furniture and $3,085 in lost security deposits. These expenses totaled $59,158. He also testified that, in his opinion, a sign was imperative for success of a restaurant and the absence of a sign was directly related to the failure of Empanada House. This uncontroverted evidence supports the jury finding of actual damages. We overrule appellants' eighth issue.

In their ninth issue, appellants challenge the admission of evidence which, they contend, was admitted in violation of the rule against hearsay. The evidence at issue includes Giles's testimony that numerous customers told her they had difficulty finding the restaurant. When she related these comments to the landlord's representative, she was told to submit the comments in writing. Giles placed a writing tablet in the restaurant and

obtained several written comments from customers concerning their difficulty in finding the business. Giles submitted these to the management company, and also introduced them into evidence over appellants' objection.

The written comments were admitted for the limited purpose of showing that Yari had notice of customer complaints rather than for the truth of their contents. We must presume the jury followed the court's instructions. *Moore v. Sims*, 882 S.W.2d 844, 847 (Tex.Crim.App. 1994). Moreover, Giles presented the testimony of one of the customers who submitted a written comment. Consequently, any error in admitting the written comments was harmless. *See* Tex. R. App. P. 44.1. We overrule appellants' ninth issue.

Appellants' tenth issue assigns error to the trial court's failure to award damages to them for unpaid rent on the ground that Giles abandoned the property in violation of the lease "because there is no evidence that appellants breached the lease." This is merely a restatement of appellants' first issue. Having found there was legally sufficient evidence to support the jury's finding that appellants breached the lease, we overruled the first issue. We likewise overrule this issue.

Finding no merit in appellants' issues we must, and hereby do, affirm the judgment of the trial court.


John T. Boyd
Chief Justice


16

Do not publish.