KEMMONS WILSON, INC., William E. Hayward, and Kemmons Wilson Companies, Plaintiffs/Appellees,

v.

ALLIED BANK OF TEXAS and Bankers Trust Company, Defendants/Appellants.

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 3, 1992.

Application for Permission to Appeal Denied by Supreme Court May 4, 1992.

James W. McDonnell, Jr., Glen G. Reid, Jr., and Thomas J. Walsh, Jr., Memphis, for plaintiffs/appellees.

W. Ted Minick, Mark D. Goranson, Houston, Tex., Jef Feibelman, and Holly Lillard, Memphis, for defendants/appellants.

FARMER, Judge.

The defendants, Allied Bank of Texas and Bankers Trust Company, appeal from the trial court's judgment on a jury verdict finding defendants in breach of contract and awarding damages to plaintiffs, Kemmons Wilson, Inc., William E. Hayward, and Kemmons Wilson Companies, in the amount of $2.5 million.

Kelley Manufacturing Company, which operated a plant in Olive Branch, Mississippi, filed for bankruptcy in November 1986. Defendant banks, as the major creditor of Kelley and with the consent of the trustee in bankruptcy, began efforts to sell Kelley's assets, including the Olive Branch plant.

On March 12, 1987, plaintiffs sent a letter proposal to defendants stating plaintiffs' intent to purchase the Kelley assets, excluding accounts receivable and specified real estate, and enclosing earnest money of $50,000 by check. On April 1, 1987, the parties executed a letter agreement providing that plaintiffs would purchase the assets for $9 million, payable in cash and notes, subject to a thirty-day investigation period. The agreement also granted plaintiffs a right of first refusal and provided that upon plaintiffs' receipt of notice from defendants of another offer for the assets, plaintiffs would have ten business days to match the offer.

On April 10, 1987, plaintiffs received notice that defendants had received another offer to purchase the Kelley assets, including accounts receivable and a purchase option on real estate, for $9 million in cash.

Defendants evidently had doubts about plaintiffs' ability to secure financing and informed plaintiffs a $1 million deposit would be required before defendants would allow plaintiffs to exercise their right of first refusal. Defendants did not impose this requirement on the other offeror.

On April 23, 1987, within the specified period of ten business days, plaintiffs attempted to exercise their right of first refusal. Also on April 23, defendants informed plaintiffs that the other offer provided an additional term for a closing date of May 8, 1987, which plaintiffs would not agree to at that time.

Defendants cancelled a meeting with plaintiffs scheduled for April 24, 1987, but continued to negotiate with the other offeror, Dupon–Kissner–Moran (DKM). There was evidence that the defendants then persuaded the trustee in bankruptcy to file an emergency motion in the Houston bankruptcy court for approval of a sale of the assets to DKM instead of plaintiffs.

The hearing was held on May 1, 1987, at which time the bankruptcy court, instead of approving the sale, held an auction. DKM submitted the only bid of $9.2 million. Plaintiffs were represented at the hearing but did not bid, taking the position that defendants had breached their contract with plaintiffs for sale of the assets.

The U.S. District Court for the Southern District of Texas in Houston refused to grant plaintiffs' motion for a stay pending appeal of the bankruptcy court's order. Plaintiffs subsequently filed this lawsuit for breach of contract.

On appeal to this Court the defendant banks raise the following assignments of error:

1. The trial court erred in denying the defendants' motions for directed verdict and motion to have verdict and judgment set aside and to have judgment entered in favor of defendants, and in rendering judgment for plaintiffs on their breach of contract claim because (a) plaintiffs Kemmons Wilson, Inc. and William E. Hayward were not parties to the contract sued upon and therefore had no rights thereunder; (b) plaintiff Kemmons Wilson Companies is not a legal entity entitled to sue or be sued; (c) the contract is illusory and void for want of mutuality; (d) plaintiffs failed to fulfill the condition precedent of obtaining bankruptcy court approval of the contract; and (e) there was no evidence of a causal link between the alleged breach of contract by the defendants and any damages allegedly suffered by plaintiffs.

2. The trial court erred in instructing the jury (a) as to an additional, oral term of the written contract whereby the defendants allegedly agreed to be responsible for obtaining bankruptcy court approval because plaintiffs neither pled, sought, nor offered any evidence to prove the additional oral term of the written contract; (b) that plaintiffs' failure to perform the condition precedent of obtaining bankruptcy court approval was excused if the banks prevented, hindered, or failed to cooperate in plaintiffs' performance because under Texas law, a condition precedent is excused only where its performance is actually prevented by the other party to a contract; and (c) that there was an implied duty of good faith in the contract which required defendants to help plaintiffs obtain bankruptcy court approval because under Texas law, there is no such implied duty of good faith.

3. The trial court erred in awarding damages to plaintiffs because plaintiffs failed to prove the proper measure of damages.

4. The trial court erred in allowing plaintiffs to admit evidence of lost profits because under Texas law plaintiffs were not entitled to recover lost profits.

5. The trial court erred in denying the defendants' motion for remittitur because the jury's award of damages is clearly in excess of the range of reasonableness and not supported by credible proof.

### Waiver

■ We agree with plaintiffs' characterization of issues 1(a), (b) and (c) as essentially issues of capacity or legal existence

covered by Tennessee Rule of Civil Procedure 9.01. Rule 9.01 provides that

> [i]t is not necessary to aver the capacity of a party to sue or be sued or the authority of a party to sue or be sued in a representative capacity or the legal existence of an organized association of persons that is made a party. *When a party desires to raise an issue as to the legal existence of any party or the capacity of any party to sue or be sued or the authority of a party to sue or be sued in a representative capacity, he shall do so by specific negative averment, which shall include such supporting particulars as are peculiarly within the pleader's knowledge.* (Emphasis added)

The failure to make a specific negative averment of the plaintiffs' authority to sue constitutes a waiver of the objection. *Reeves v. Perkins,* 509 S.W.2d 233, 235 (Tenn.Ct.App.1973); T.R.C.P. 12.08.

> Rule 12.08 provides that
>
> [a] party waives all defenses and objections which he does not present either by motion ... or ... in his answer or reply, or any amendments thereto.... [1]

Rule 12.08 also provides that certain defenses may not be raised by amendment. These include lack of personal jurisdiction, improper venue, insufficiency of process, and insufficiency of service of process. T.R.C.P. 12.02, 12.08. Thus, although Rule 9.01 requires a party to raise the defense of lack of capacity by specific negative averment, Rule 12.08 does not prohibit a party from raising the defense for the first time in an amendment to the pleadings. Finally, Rule 12.08 provides that if the defense is raised at trial, the trial judge shall dispose of such defense "as provided in Rule 15 in the light of any evidence that may have been received."

In that regard, T.R.C.P. 15.01 [2] provides that

> [a] party may amend his pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, he may so amend it at any time within 15 days after it is served. *Otherwise a party may amend his pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.* A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 15 days after service of the amended pleading, whichever period may be longer, unless the court otherwise orders. (Emphasis added)

This Court has recognized that "amendments to pleadings lie within the sound discretion of the trial court." *Garthright v. First Tennessee Bank of Memphis,* 728 S.W.2d 7, 9 (Tenn.Ct.App.1986). In *Gardiner v. Word,* 731 S.W.2d 889, 891–92 (Tenn.1987), our Supreme Court indicated that

> [i]n considering whether to grant a motion to amend, a trial court should consider several factors such as undue delay in filing the amendment, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party, and the futility of the amendment.

■ In this case the plaintiffs filed their complaint in July 1987. The defendant

---

1. T.R.C.P. 12.08 contains two exceptions not relevant here. These exceptions are:

   (1) that the defense of failure to state a claim upon which relief can be granted, the defense of failure to join an indispensable party, and the objection of failure to state a legal defense to a claim may also be made by a later pleading, if one is permitted, or by motion for judgment on the pleadings or at the trial on the merits, and except (2) that, whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action.

2. Although the amendment was made during trial, T.R.C.P. 15.02 does not apply. This issue was not tried by the parties' express or implied consent because plaintiffs objected to the defendants' request to amend their answer. In addition, the amendment did not result from the introduction of evidence outside of the issues raised in the pleadings.

banks filed an answer and petition for removal in August 1987. After remand by the federal court, the banks filed a motion for continuance on March 9, 1990, and a motion for summary judgment on May 4, 1990. The motion for summary judgment was denied, and on January 31, 1991, the banks filed a motion to amend their answer, which amendment was allowed by the trial court. In the amendment, the banks raised the defenses of failure to satisfy conditions precedent, waiver and estoppel, and failure to mitigate damages. The banks also included a general statement that "[o]ne or more of the Plaintiffs lack[ed] standing to assert the claims stated in Plaintiffs' Complaint."

The jury trial lasted from February 4 through 14, 1991. The trial judge allowed both parties to amend the pleadings during the trial. The defendant banks amended their answer to specifically raise the defenses of lack of capacity and standing on the basis that "Kemmons Wilson Companies [was] not a legal entity and ha[d] no standing or capacity to allege any of the causes of action contained in Plaintiffs' Complaint." This amendment was the first point in the lawsuit at which defendants raised the issue of a plaintiff's capacity or legal existence by specific negative averment as required by T.R.C.P. 9.01.

The plaintiffs argue that, because of defendants' undue delay in raising the issue, this defense was waived. The banks answered the complaint on August 14, 1987. Both parties engaged in extensive discovery. During the course of the lawsuit, the banks filed motions for summary judgment and amendment of their answer. Then, on the first day of trial, three and one-half years after the banks' initial answer, they raised the defense of lack of capacity.

Delay in filing the amendment, however, is not the only factor to be considered in deciding whether to allow an amendment to raise a new defense. *See Gardiner*, 731 S.W.2d at 891–92. In objecting to the amendment at trial, plaintiffs' counsel complained of defendants' delay in raising the

defense and the lack of notice to the plaintiffs but failed to state how the amendment prejudiced them. *See Gardiner*, 731 S.W.2d at 892; *Campbell County Board of Education v. Brownlee–Kesterson, Inc.*, 677 S.W.2d 457, 463 (Tenn.Ct.App.1984). In fact, at trial plaintiffs were allowed to amend their complaint to add Kemmons Wilson Companies as a party plaintiff. Absent a showing of undue prejudice to the plaintiffs, we hold that the trial court did not abuse its discretion in allowing defendants to amend their answer to raise the defense of lack of capacity.

*Capacity*

■ On its face, the agreement sued upon purports to be between Kemmons Wilson Companies and Bankers Trust Company and Allied Bank of Texas.[3] Although the agreement states Kemmons Wilson Companies' intent to form a new corporation in affiliation with William E. Hayward to purchase the assets, neither Hayward nor the proposed corporation was made a party to the agreement by its terms. Plaintiffs have not argued that Hayward was a third party beneficiary to the agreement or any other similar theory. Instead, they argue that Hayward had a right to sue on the contract as a principal. As we interpret the agreement, we fail to see how Hayward was made a party to the agreement or how the banks could have held Hayward liable under the contract. Therefore, we reverse the judgment as to Hayward.

■ As to Kemmons Wilson, Inc., and Kemmons Wilson Companies, we reach a different result. Both Texas and Tennessee law authorize a corporation to operate under an assumed name or trade name. Tex.Bus.Corp. Act art. 2.05 (Vernon 1980 & Supp.1991); T.C.A. § 48–14–101(d) (Supp. 1991). Both states' statutes require corporations authorized to do business in the state to file assumed name certificates with the secretary of state.

Tex.Bus. & Com.Code Ann. § 36.25 (Vernon 1987) specifically provides that "[f]ail-

---

**3.** The agreement also contains a provision that it is to be governed by Texas law.

ure to comply with the [statute's] provisions ... by any person shall not impair the validity of any contract ... nor prevent such person from defending any action or proceeding in any court of this state, but such person shall not maintain an action or proceeding *in any court of this state....*" (emphasis added).

Therefore, we find that it was permissible for Kemmons Wilson, Inc., to operate and contract under the name of "Kemmons Wilson Companies." Defendants' argument that Kemmons Wilson Companies could not sue on the contract because it had no legal existence is without merit.

■ Similarly, defendants' argument that Kemmons Wilson, Inc., was not a party to the agreement must fail also. The record reveals that during their course of dealings, the banks obtained financial statements on Spence Wilson, his two brothers, and Kemmons Wilson, Inc. In addition, the $50,000 earnest money check was drawn on the account of Kemmons Wilson, Inc. It is apparent from the record that the banks knew they were actually dealing with Kemmons Wilson, Inc., even though the name on the contract was Kemmons Wilson Companies.

*Mutuality*

■ Banks also assert that, as written, the contract could only be enforced against the banks and, thus, was illusory and void for want of mutuality. In our view, this argument belies the very nature of the agreement. The agreement gave plaintiffs a right of first refusal to purchase the Kelley assets. This right was granted to Kemmons Wilson Companies, not to the to-be-formed corporation which would actually purchase the assets. Once Kemmons Wilson exercised its right of first refusal, the banks were then obligated to sell to Kemmons Wilson the Kelley assets. Similarly, Kemmons Wilson would be obligated to purchase the assets.

The banks argue that the only party obligated to perform was the to-be-formed corporation and that, because the corporation was never formed, no party is entitled to sue on the contract. The question of who was obligated under the contract, the plaintiffs or the to-be-formed corporation, is closely analogous to the question of promoter liability for pre-incorporation transactions. If the new corporation had, in fact, been formed and if it had ratified or approved the contract, we agree that the new corporation could have been found liable under the contract. Under Texas law, in certain situations, promoters may also be liable for pre-incorporation contracts which they execute. In *Aloe Limited, Inc. v. Koch*, 733 S.W.2d 364, 366 (Tex.Ct.App. 1987), the Court of Appeals of Texas summarized the law follows:

As a general rule, where a promoter enters into a contract in the name of a corporation which has not yet been formed, he is personally liable on the contract absent an agreement with the contracting party that the promoter is not liable. *Bibbee v. Root Glass Co.*, 96 S.W.2d 975 (Tex.Comm'n App.1936, opinion adopted). However, there is no personal liability where the contract is made in the name and solely on the credit of the proposed corporation and contracting party knows that the corporation does not yet exist. *Schwedtman v. Burns*, 11 S.W.2d 348 (Tex.Civ.App.—El Paso 1928, no writ). *See also Weatherford, M.W. & N.W. Railway Co. v. Granger*, 86 Tex. 350, 24 S.W. 795 (1894). Whether a promoter is personally liable on a pre-incorporation contract depends on the intention of the contracting parties. *See Weeks v. San Angelo National Bank*, 65 S.W.2d 348 (Tex.Civ.App.—Austin 1933, writ ref'd).

733 S.W.2d at 366. In the case at bar, where Kemmons Wilson was a named party to the contract, it is clear that the parties intended for Kemmons Wilson to be liable under the contract, at least until the new corporation came into existence. Although in some places the contract refers to the to-be-formed corporation (the Purchasing Company), provision 9 of the April 1, 1987, agreement grants the right of first refusal to Kemmons Wilson Companies, not the purchasing company. The agreement did not require Kemmons Wilson to

form the new corporation before exercising its right. In addition, if Kemmons Wilson had exercised its right of first refusal and then refused to form the corporation or purchase the Kelley assets, we are convinced that the banks could have sued Kemmons Wilson for breach of contract despite the fact that the purchasing company was never formed. Defendants' argument that the contract was illusory and void for want of mutuality is without merit.

### Bankruptcy Court Approval

■ The contract stated that it "would be subject to our [Kemmons Wilson's] evaluation of the Houston property, obtaining the appropriate Bankruptcy Court approvals and execution of a definitive agreement." Obtaining bankruptcy court approval was a condition precedent to defendants' obligation to consummate the transaction. Defendants argue that the word "our," referring to Kemmons Wilson, modified the words "evaluation," "obtaining," and "execution" so that these three actions were the responsibility of Kemmons Wilson.

We disagree. It is not clear from the language of the contract who would be responsible for obtaining bankruptcy court approval, but we are not convinced that the word "our" was intended to modify the word "obtaining." If this were so, the word "our" would also modify "execution." Execution of an agreement would require action by both parties.

Because the language of the contract is not clear as to who would seek bankruptcy court approval, we hold that it was not error for the trial court to admit parol evidence relative to this issue.

■ Defendants further contend that the trial court erred in instructing the jury that the contract included an implied duty of good faith. The Supreme Court of Texas has specifically rejected the theory that every contract contains an implied duty of good faith and fair dealing. *English v. Fischer*, 660 S.W.2d 521, 522 (Tex.1983). Texas courts will recognize such a duty only when a special relationship exists between the parties, such as the relationship between insurer and insured. *Aranda v. Insurance Co. of North America*, 748 S.W.2d 210, 212 (Tex.1988); *Texstar North America, Inc. v. Ladd Petroleum Corp.*, 809 S.W.2d 672, 677–78 (Tex.Ct.App.1991).

■ Although Texas courts do not recognize in every contract an implied duty of good faith and fair dealing, they do recognize that "where the obligation of a party depends upon a certain condition being performed and the fulfillment of that condition is prevented by the act of the other party, the condition is considered fulfilled." *Anderson v. Jasper Federal Savings & Loan Ass'n*, 738 S.W.2d 768, 770 (Tex.Ct.App.1987). *See also Sargent v. Highlite Broadcasting Co.*, 466 S.W.2d 866, 867 (Tex.Civ.App.1971). This is also true where the other party hinders or makes impossible the fulfillment of a condition, and we find that the trial court correctly instructed the jury in this regard. *Fair v. Uhr*, 310 S.W.2d 125, 128 (Tex.Civ.App.1958); *Rich v. McMullan*, 506 S.W.2d 745, 747 (Tex.Civ.App.1974).

In *Sargent v. Highlite Broadcasting Co.*, 466 S.W.2d 866 (Tex.Civ.App.1971), the plaintiff broadcasting company sued the defendant and asked the trial court to declare null and void the parties' contract for sale of the company. The trial court granted the requested relief, but the court of civil appeals reversed. The court found that evidence was presented which would show that a condition precedent, FCC approval, was not fulfilled because of the company president's refusal to execute the necessary documents requesting that approval. The court held that this was a question of fact requiring a determination in the trial court. *Id.* at 867.

In this case, there was material evidence presented showing that the responsibility of obtaining bankruptcy court approval belonged to the banks and that the banks prevented or hindered the fulfillment of this condition. At trial, plaintiffs introduced the deposition of Charles W. Rawl, who was a vice-president in special loan services with defendant Allied Bank of Texas during the transaction in question. In the course of the deposition, Rawl answer-

ed "Yes" to the following question by plaintiffs' attorney:

> Is it not also true that the banks all the way through in dealing with all the prospective purchasers, not just Kemmons Wilson and DKM, Cotler or any of the prospective purchasers, represented and believed that bankruptcy court approval would be no problem, that the banks could get that accomplished?

In addition, on direct examination by plaintiffs' counsel, Mr. Paul Salvas, a representative of defendant Bankers Trust Company, testified that "working with the trustee and the potential purchasers, we [the banks] felt we could accomplish bankruptcy court approval with everyone's cooperation." There was testimony by Rawl that the banks had developed a strategy to appear to take a neutral position in the bankruptcy court and to relieve themselves of any potential liability to Kemmons Wilson, and Salvas acknowledged that the banks' attorneys requested the trustee in bankruptcy to file a motion requesting the bankruptcy court to approve the sale to DKM. It is undisputed that the banks never attempted to request the bankruptcy court to approve the Kemmons Wilson sale.

In *In re Estate of Elam*, 738 S.W.2d 169 (Tenn.1987), the Supreme Court stated that

> [i]n reviewing a jury charge, an appellate court considers the charge as a whole in determining whether prejudicial error has been committed. *Abbot v. American Honda Motor Co.*, 682 S.W.2d 206, 209 (Tenn.App.1984). The specific portion of the charge complained of must be viewed in connection with its context. *Carman v. Huff*, 32 Tenn.App. 687, 227 S.W.2d 780 (1949).

738 S.W.2d at 174.

In the case at bar, the trial judge gave the following instructions:

> This agreement also provided in part that it was, quote, subject to closing at the earliest possible date, end quote, and, quote, subject only to [some other things] and obtaining the appropriate bankruptcy court approvals and execution of a definitive agreement, end quote.

So you will see that the agreement does not specifically state in writing who shall obtain the appropriate bankruptcy court approvals nor which approvals are appropriate. It is the theory and contention of the plaintiffs in this suit that it was understood and agreed between the parties in all of their discussions and therefore was part of the contract that the banks were the ones who were to obtain the appropriate bankruptcy court approval without any difficulty, if any was indeed necessary.

In the alternative, the plaintiffs say that no such approval was necessary because the trustee in bankruptcy had already obtained an order from the bankruptcy court allowing the banks to foreclose their liens on some of the assets. As a third alternative, the plaintiffs' position is that even if it was appropriate to obtain the approval of the bankruptcy court for the sale, the defendants not only did not actively attempt to obtain the approval of the contract with the plaintiffs, but that they actively took steps to frustrate and defeat the possibility of obtaining the bankruptcy court's approval of the sale to them.

The defendants deny that they agreed to obtain the bankruptcy court approval themselves, but say that even if they did, they did nothing to frustrate or defeat the approval of the plaintiffs' contract by the court. And they were completely neutral in the matter and asked the court to approve either the plaintiffs or the DKM agreement.

Under the circumstances of this case it was appropriate to obtain the approval of bankruptcy court since at least some of the assets were still legally under the supervision of the bankruptcy court, and neither the attorneys nor the bankruptcy judge knew for certain whether or not it was absolutely legally necessary for the bankruptcy court to approve the sale.

However, in every contract there is an implied duty on both parties to the contract to act in good faith and to take no steps to hinder or to try to prevent the other party from carrying out his part of the agreement or to defeat the carrying

out of the intention of the parties. If a contracting party prevents or hinders the occurrence of a condition precedent, for performance under the contract or fails to cooperate in seeing that the condition is fulfilled, then the condition is ordinarily excused, that is to say it is deemed fulfilled. Such action not only excuses performance of a condition, but is itself a breach for which damages may be recovered for any injury which results.

Of course, it was not within the absolute power of the defendants, the banks, to control the actions of the bankruptcy court and judge. However, their duty of good faith under the contract would include a duty not to do anything to attempt to defeat the right of the plaintiffs to purchase the assets they had contracted to buy. So if you find that the banks promised to ask the court to approve the sale solely to the plaintiffs or if the banks did act in bad faith and attempted to frustrate and defeat the obtaining of the approval of the bankruptcy court of the plaintiffs' contract, then they would have waived any condition in the contract that the bankruptcy court approve the agreement and would have themselves breached the contract.

On the other hand, if they did not promise to ask the court for approval of the sale to the plaintiffs, and if they acted in good faith and took no steps to try to frustrate or defeat the approval of sale by the bankruptcy court, then they would not have breached the contract, merely because the bankruptcy court went ahead and permitted the sale to the highest bidder.

\* \* \* \* \* \*

... Each party to a contract has an obligation to use reasonable diligence in seeing that a condition precedent, that is to say a condition in the contract which must be met before the contract is carried out, to see that a condition precedent to a contract is fulfilled.

Accompanying every contract is the duty to perform with care, skill, reasonable expediency and faithfulness with the thing agreed to be done. That applies to both parties to a contract.

Our review of these instructions makes it clear that the trial judge's charge with regard to a duty of good faith was limited to the context of the parties' responsibility for fulfillment of the condition precedent. As previously noted, the judge correctly instructed the jury that the Banks had a duty not to prevent or hinder the occurrence of the condition precedent of obtaining bankruptcy court approval. When viewed in context, the court's characterization of this obligation as one of good faith or reasonable diligence did not constitute prejudicial error, and defendants have failed to demonstrate how the charge affected the jury's verdict.

### Damages

■ Defendants' argument that plaintiffs failed to prove causation is without merit. Although approval of the sale was ultimately the responsibility of the bankruptcy judge, the foregoing evidence would support a finding that the banks represented that obtaining bankruptcy court approval would be no problem and then prevented this condition from occurring. If the banks had requested the bankruptcy court to approve the Kemmons Wilson sale and the court had refused, the result might be different. The evidence indicates that such was not the case.

■ Defendants' argument that plaintiffs failed to prove the correct measure of damages is also without merit. We have already determined that the parties to the contract were the banks and Kemmons Wilson, Inc., d/b/a Kemmons Wilson Companies. Kemmons Wilson, as a party to the contract, was entitled to sue in its own right. The to-be-formed corporation was not a party to the contract, and damages should not be measured, as defendants suggest, by an alleged decrease in the hypothetical fair market value of the stock of a corporation that was never formed.

■ As to lost profits, traditionally Texas courts have denied such recovery for new and unestablished businesses where the business was not in existence prior to

the breach and where the business could produce no contracts on which it had relied. *Harper Building Systems v. Upjohn Co.*, 564 S.W.2d 123, 126 (Tex.Civ.App.1978). Recently the courts have relaxed this rule somewhat and have allowed recovery of lost profits where the plaintiffs operated a similar business, *First Title Co. of Waco v. Garrett*, 802 S.W.2d 254 (Tex.Ct.App.1990) (wrecking-yard and parts business); *Pena v. Ludwig*, 766 S.W.2d 298 (Tex.Civ.App. 1989) (hairstyling shop), and where "factual data [was] otherwise available to furnish a sound basis for computation." *Garrett*, 802 S.W.2d at 260. A precise calculation is not required, but there must be "evidence from which profits [can] be intelligently estimated." *Orchid Softwear v. Prentice–Hall, Inc.*, 804 S.W.2d 208, 210–11 (Tex.Ct. App.1991).

In this case, the plaintiffs presented evidence that they had operated and recently sold for a profit a manufacturing facility in Jonesboro, Arkansas, very similar to the Kelley operation. Jerry Garner, a financial consultant hired by Kemmons Wilson to investigate the Kelley assets, testified that he examined the fixed assets and inventory, including work-in-progress and raw materials. He also investigated sales and accounts receivable for the Kelley plant and arrived at projected profits for a five-year period. The Kelley plant itself was an on-going business prior to the bankruptcy in 1986. The figures used by Garner represented actual equipment, inventory, accounts receivable, and sales at the Kelley operation and were not speculative or hypothetical.

We find that the available factual data was sufficient to furnish a sound basis for computation of lost profits and that the trial court did not err by admitting evidence thereof. Therefore, we hold that defendants are not entitled to a remittitur of the judgment.

Appellees have presented an issue that, should we remand this cause for a new trial, the trial court should be directed to instruct the jury on fraud and punitive damages. In light of our opinion, this issue is moot.

The judgment in favor of plaintiff William E. Hayward is reversed. In all other respects, the judgment of the trial court is affirmed. Costs of this appeal are taxed one-half to the appellants and one-half to the appellees for which execution may issue if necessary.

TOMLIN, P.J., and HIGHERS, J., concur.