IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 10, 2022 Session

## RITA A. ROACH v. MOSS MOTOR COMPANY, INC. ET AL.

**Appeal from the Circuit Court for Robertson County**
**No. 2019-CV-231     Ross H. Hicks, Judge**

_____

## No. M2021-00511-COA-R3-CV

_____

The trial court denied a defendant's motion to amend to include a cross-claim against another defendant. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

J. STEVEN STAFFORD, P. J., W.S., delivered the opinion of the court, in which KENNY ARMSTRONG and CARMA DENNIS MCGEE, JJ., joined.

Jonathan Williams, Nashville, Tennessee, for the appellant, Steven L. Kerr.

Janet Strevel Hayes, Knoxville, Tennessee and Robert F. Chapski and Whitney Henry Kimerling, Nashville, Tennessee, for the appellee, Tracy Langston Ford, LLC.

William G. Wojcik, II and John J. Griffin, Nashville, Tennessee, for the appellee, James W. Mitchell, d/b/a The Tire Shop.

Emily Bragg Faulkner, Memphis, Tennessee, for the appellee, Moss Motor Company, Inc.

## OPINION

### I. FACTUAL AND PROCEDURAL HISTORY

On August 26, 2018, a car driven by Defendant/Appellant Steven L. Kerr ("Kerr") collided with a car driven by Patricia Jorgenson ("Mrs. Jorgenson"). Mrs. Jorgenson died as a result of her injuries sustained in the crash. Rita Roach ("Roach") and Donna Warfield ("Mrs. Warfield") were passengers in Kerr's car. This accident resulted in three separate

lawsuits in two different counties. On May 8, 2019, Brian Jorgenson, as executor of the Estate of Mrs. Jorgenson and on behalf of all wrongful death beneficiaries of Mrs. Jorgenson ("Mr. Jorgenson"), filed a complaint for wrongful death against Kerr, Moss Motor Company, Inc. ("Moss"), and James W. Mitchell d/b/a The Tire Shop ("Mitchell"), in the Circuit Court for Davidson County. On July 9, 2019, Roach filed a complaint related to injuries she sustained in the crash in the Circuit Court for Robertson County (the "trial court"), against Kerr, Moss, and Mitchell. On August 23, 2019, Mrs. Warfield and her husband, Gary Lynn Warfield (collectively, "the Warfields") filed a complaint in the trial court against Kerr, Moss, and Mitchell, related to the injuries Mrs. Warfield sustained in the crash.[1]

In due course, Kerr and Moss filed answers raising the comparative fault of Vernon A. Dotson, Jr. d/b/a D&D Tire & Repair ("Dotson"), Christopher Armstrong d/b/a D&D Tire & Repair ("Armstrong"), and Tracy Langston Ford, LLC ("Ford"). Therefore, Plaintiffs each filed amended complaints naming Dotson, Armstrong, and Ford as defendants at various times (Mr. Jorgenson was the first of the Plaintiffs to do so, in an amended complaint filed August 26, 2019). Roach and the Warfields also amended their complaints to add Mr. Jorgenson as a defendant, after Moss alleged comparative fault against Mrs. Jorgenson.

On July 19, 2019, the Davidson County Circuit Court granted Mitchell, Moss, and Kerr's joint motion for transfer of venue to the trial court. Plaintiffs' three cases were thereafter consolidated in the trial court on December 16, 2019. According to Kerr, his liability insurance carrier retained counsel for the sole purpose of defending against the claims made against him, not for asserting possible claims he might have against other parties. On February 14, 2020, a new attorney representing Kerr as a potential cross-claimant filed a motion for leave to file an amended answer asserting a cross-claim for Kerr's injuries and property damage sustained as a result of the collision (the "motion to amend").[2] Before Kerr's new attorney filed his notice of appearance, Kerr had filed six answers and one amended answer to Plaintiffs' various complaints and amended complaints. According to Kerr, only preliminary written discovery was ever completed, no depositions were taken or scheduled, and a trial date was never set.

The motion to amend stated that it was set to be heard in the trial court on March 3, 2020. The hearing was subsequently moved to April 7, 2020. In the meantime, on March 18, 2020, Ford filed a motion to amend its answers to allege the comparative fault of Cooper Tire and Rubber Company ("Cooper Tire"). Cooper Tire had been mentioned in

---

[1] We will refer to Roach, the Warfields, and Mr. Jorgenson, collectively, as "Plaintiffs."

[2] In the motion to amend, Kerr stated that he sought to add a cross-claim against "the other defendants." On June 1, 2020, Kerr filed a notice of filing in the trial court stating that he had attached his proposed cross-claim, which had previously been provided to "the parties." The attached proposed cross-claim stated that it was being filed against Moss, Mitchell, Dotson, Armstrong, and Ford (collectively, the "cross-defendants"). Therefore, we will consider the cross-claim as it applies to the cross-defendants.

Moss's answer to Mr. Jorgenson's first complaint, and Kerr had also raised allegations of comparative fault against Cooper Tire in his amended answer to Mr. Jorgenson's first complaint.

The trial court denied Kerr's motion to amend as untimely in an order filed May 5, 2020. Therein, the trial court stated that it did not hear arguments on the motion due to COVID-19. The trial court's order stated further, inter alia:

> 6. Defendant Kerr did not include any cross-claims in his seven (7) Answers to [Plaintiffs' complaints and amended complaints], all of which were filed prior to the expiration of the one year statute of limitations. *See* Tenn. Code Ann. § 28-3-104(a)(1)(A).

> 7. For the foregoing reasons, the Motion is DENIED as untimely.

On May 19, 2020, Kerr filed a motion to alter or amend the trial court's order denying his motion to amend, pursuant to Rules 59 and 60 of the Tennessee Rules of Civil Procedure. Therein, Kerr specifically requested an in-person hearing and scheduled one for June 2, 2020. On a form titled "Motion Hearing on the Pleadings Results Form," filed June 2, 2020, and again without a hearing,[3] the trial court denied Kerr's motion to alter or amend but granted Ford's motion to amend its answers. The form stated that counsel for Ford was directed to prepare an order. More detailed orders granting Ford's motion to amend its answers and denying Kerr's motion to alter or amend were then filed in the trial court on July 7, 2020.

In the order denying Kerr's motion to alter or amend, the trial court explicitly acknowledged that there was no evidence of bad faith on Kerr's part in filing his motion to amend. Nevertheless, the trial court concluded that Kerr's motion to amend was unduly delayed, finding that "Kerr had ample opportunity since August 26, 2018[,] when his cause of action arose, and then again after he was sued in May 2019, to bring a personal injury claim against the defendants, but he deliberately chose not to do so." The trial court further found that Kerr had "failed to include any cross-claims in his seven answers to the underlying complaints" and he "did not timely notify the defendants of his intent to file a cross-claim against them." The trial court also found that Kerr's cross-claim would unduly prejudice the cross-defendants, reasoning that

> [t]he parties to this consolidated action are several months into discovery in this matter, with a mediation scheduled for July 2020. Kerr's late addition

---

[3] At oral argument, counsel for Kerr stated that, in light of COVID-19, he had requested hearings via alternative means than in person, including phone or videoconference. Nevertheless, it appears to be undisputed that there were never any hearings in the trial court on the issue of whether Kerr would be able to amend his answer to assert a cross-claim.

crossclaim for his own personal injuries and damages would require prior written discovery and investigative efforts to be redone and impact the collective evaluation of all the prior claims in anticipation of the mediation approaching two months from now.[4]

Finally, the trial court concluded that Kerr's cross-claim would be futile because it appeared to be barred by the one-year statute of limitations applicable to personal injury actions, and that Tennessee Code Annotated section 28-1-114(a) was inapplicable to save Kerr's cross-claim, "at least as to any claims against [Ford], because Kerr's claim was barred at the time Plaintiffs interposed their claims against [Ford] in November 2019."

On June 4, 2020, Kerr filed a motion in the trial court for permission to file an interlocutory appeal under Rule 9 of the Tennessee Rules of Appellate Procedure. The motion was denied by the trial court. On August 20, 2020, Kerr filed an application in this Court for an extraordinary appeal, pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure. This Court denied Kerr's Rule 10 application by order of August 26, 2020.

All of the remaining claims in this case were eventually settled. The final order dismissing the last of those claims was entered on May 4, 2021. Kerr then appealed to this Court, raising only the question of whether he should have been allowed to amend his answer to allege a cross-claim against the cross-defendants. Of the cross-defendants, only Ford, Moss, and Mitchell filed briefs as appellees in this appeal.[5]

## II. DISCUSSION

### A.

Rule 15.01 of the Tennessee Rules of Civil Procedure states, in pertinent part: A party may amend the party's pleadings once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been set for trial, the party may so amend it at any time within 15 days after it is served. Otherwise a party may amend the party's pleadings only by written consent of the adverse party or by leave of court; and leave shall be freely given when justice so requires.

As our supreme court has previously explained, "[g]enerally, trial courts must give the proponent of a motion to amend a full chance to be heard on the motion and must consider the motion in light of the amendment policy embodied in Rule 15.01 of the Tennessee

---

[4] Of course, the trial court's statement that the July 2020 mediation would be occurring in two months was incorrect, given that the order containing that statement was itself filed in July 2020.

[5] We will refer to Ford, Moss, and Mitchell, collectively, as "Appellees."

Rules of Civil Procedure that amendments must be freely allowed[.]" ***Cumulus Broadcasting, Inc. v. Shim***, 226 S.W.3d 366, 374 (Tenn. 2007) (citation omitted). To that end, "trial courts [are required] to be liberal in allowing pretrial motions to amend." ***Id.*** at 375 (collecting cases). "The reason is 'to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties.'" ***Weston v. Cmty. Baptist Church of Wilson Cty.***, No. M2004-02688-COA-R3-CV, 2007 WL 394644, at *6 (Tenn. Ct. App. Feb. 5, 2007) (quoting ***Doyle v. Frost***, 49 S.W .3d 853, 856 (Tenn. 2001) (quoting ***Karash v. Pigott***, 530 S.W.2d 775, 777 (Tenn. 1975))).

"[F]actors a trial judge should weigh in considering a [m]otion to [a]mend" include "[u]ndue delay in filing; lack of notice to the opposing party; bad faith by the moving party[;] repeated failure to cure deficiencies by previous amendments[;] undue prejudice to the opposing party[;] and futility of amendment" (the "***Merriman*** factors"). ***Merriman v. Smith***, 599 S.W.2d 548, 559 (Tenn. Ct. App. 1979). "Of these factors, the most important is the proposed amendment's potential prejudicial effect on the opposing party." ***Hardcastle v. Harris***, 170 S.W.3d 67, 81 (Tenn. Ct. App. 2004) (citation omitted). Determining the prejudicial effect of an amendment requires "inquiring into (1) the hardship on the moving party if the amendment is denied; (2) the reasons for the moving party's failure to include the claim, defense, or other matter in its earlier pleading; and (3) the injustice to the opposing party should the motion to amend be granted." ***Id.***

"[I]n the event [a] motion to amend is denied, the trial court must give a reasoned explanation for its action." ***Cumulus Broadcasting***, 226 S.W.3d at 374 (citation omitted). A trial court's decision to grant or deny a motion to amend "will be reversed only for an abuse of discretion." ***Merriman***, 599 S.W.2d at 561. However, "[t]h[e] proviso in [Rule 15.01, that leave to amend shall be freely given when justice so requires,] substantially lessens the exercise of pre-trial discretion on the part of a trial judge." ***Id.*** at 559 (quoting ***Branch v. Warren***, 527 S.W.2d 89, 91 (Tenn. 1975)). The trial court will be found to have committed an abuse of discretion if it "'applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employ[ed] reasoning that causes an injustice to the complaining party.'" ***Wright v. Wright***, 337 S.W.3d 166, 176 (Tenn. 2011) (quoting ***Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.***, 249 S.W.3d 346, 358 (Tenn. 2008)).

### B.

As an initial matter, we address Kerr's concerns regarding the trial court's order denying his motion to amend. We agree with Kerr that the trial court's order was deficient, because it merely denied the motion to amend "as untimely," without clear explanation. *See **Henderson v. Bush Bros. & Co.***, 868 S.W.2d 236, 238 (Tenn. 1993). ("We note that the trial judge stated in his order that 'the motion to amend comes too late,' but we do not consider that as being a consideration of the motion or a reasoned explanation for his action."). However, the trial court later entered a more detailed order denying the motion

to alter or amend. The very purpose of a Rule 59.04 motion to alter or amend is to allow a trial court to correct errors or deficiencies before the judgment becomes final. *In re M.L.D.*, 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005). Therefore, we will consider both orders as the trial court's collective ruling for purposes of our review. We will thus consider this appeal on the merits, despite the trial court's rather conclusory first order, including the factors outlined above that are intended to guide a decision on this issue.

Our review of the order denying Kerr's motion to alter or amend, however, leads this Court to consider a different deficiency than the one raised by Kerr: whether this order—the only order to actually explain the reasoning behind the denial of the motion to amend—is the product of the trial court's independent judgment. In *Smith v. UHS of Lakeside, Inc.*, 439 S.W.3d 303 (Tenn. 2014), the Tennessee Supreme Court explained the trial court's high function in this regard:

> While, as a general matter, courts speak through their orders, this principle presupposes the performance of the judicial act reflected in the order. In this case, the judicial act should have consisted not only of announcing a decision [on the relevant motions,] but also stating the grounds for that decision.

*Id.* at 317 (internal citation omitted). When the trial court does "not provide the basis for its decision prior to the preparation of the draft orders, the grounds stated in the order cannot be attributed to the trial court." *Id.* And we may "decline[] to accept findings, conclusions, or orders when the record provides no insight into the trial court's decision-making process, or when the record casts doubt on whether the trial court conducted its own independent review, or that the opinion is the product of its own judgment[.]" *Id.* at 316 (internal citations and quotation marks omitted).

The record on appeal does more than cast doubt on whether the order denying Kerr's motion to alter or amend was the product of the trial court's independent judgment; it confirms that it was not. Here, the trial court repeatedly denied Kerr's requests to have oral arguments on his motions. As a result, no hearing occurred from which the trial court could have orally announced its rulings. The only document from which Ford's counsel could have gleaned the trial court's reasoning for denying the motion to alter or amend was the trial court's conclusory initial order denying the motion to amend and the form order denying the motion to alter or amend, which stated no legal or factual basis for that ruling whatsoever. So the reasoning employed by the order denying the motion to alter or amend was the product only of Ford's counsel's mind, not the trial court's independent judgment.

We are aware of no law that requires a trial court to make detailed findings or conclusions when ruling on a motion to alter or amend. *See* Tenn. R. Civ. P. 52.01 (stating that findings of fact and conclusions of law are not required for "any other motion except as provided in Rules 41.02 and 65.04(6)"). But as previously discussed, the order denying the motion to alter or amend is the sole order in this case that provides any detailed

reasoning for the denial of the motion to amend. And Tennessee law clearly provides that such explanation is necessary to justify the denial of such a motion. *See, e.g.*, *Cumulus Broadcasting*, 226 S.W.3d at 374; *Henderson*, 868 S.W.2d at 238. Because we must look to this order for the necessary explanation behind the denial of the motion to amend, we conclude that *UHS of Lakeside* requires that the explanation contained therein be the product of the trial court's independent judgment. Here it simply was not.

We note, however, that we may choose in appropriate cases to soldier on in reviewing an insufficient order. In particular, we have done so in prior cases where the trial judge who presided over the case has retired, and therefore vacating and remanding would only delay the proceedings further. The same is true in this case. *See Richardson v. Richardson*, No. M2020-00179-COA-R3-CV, 2021 WL 4240831, at *9 (Tenn. Ct. App. Sept. 17, 2021) (citations omitted) (explaining that this Court may take judicial notice of the fact that a trial judge has retired). However, because "the record create[s] doubt that the [party-prepared orders] represent[t] the trial court's own deliberations and decision," *UHS of Lakeside.*, 439 S.W.3d at 316, we will afford less deference than normal when assessing a trial court's discretionary decision. *Cf. Gooding v. Gooding*, 477 S.W.3d 774, 782 (Tenn. Ct. App. 2015) (footnote and internal citation omitted) ("Because 'discretionary decisions must take the applicable law and the relevant facts into account,' our deference to a trial court's discretionary decision for which Rule 52.01 compliance is required may abate when the record does not reveal which legal principles and facts the trial court relied upon in making its decision.").

## C.

First, we will address whether Kerr's amended answer would be futile. *See Merriman*, 599 S.W.2d at 559. Ford argues that Kerr's amendment sought to introduce a cross-claim that was barred by the statute of limitations, and thus the amendment would be futile. To assess this issue, we must look to Tennessee Code Annotated section 28-1-114(a), which provides that "[a] counterclaim or third party complaint or cross-claim is not barred by the applicable statute of limitations or any statutory limitation of time, however characterized, if it was not barred at the time the claims asserted in the complaint were interposed."[6]

Ford argues that "the complaint" as referenced in section 28-1-114(a) must refer to the first complaint that named Ford as a defendant, which was filed on November 18,

---

[6] *But see Daniels v. Wray*, No. M2008-01781-COA-R3-CV, 2009 WL 1438247, at *4 (Tenn. Ct. App. May 21, 2009) ("[T]he Trial Court based its ruling [denying the defendant's amended claim] on the fact that the statute of limitations as to personal injury claims had run. . . . But the statute of limitations is not one of the factors listed to consider in making such determinations[.]"); *see also Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 80 (Tenn. Ct. App. 2016) ("[C]ourts should conclude that a new claim or defense is untimely only if the party asserting it would not be entitled to amend its pleading under Rule 15.01.").

2019—because that was the first complaint wherein claims were "interposed" against Ford. Before that, Ford was not a party to the case, even though Kerr made comparative fault allegations against Ford in answers he filed on September 20, 2019. Thus, Ford argues, by the time it was named as a party on November 18, 2019, the one-year statute of limitations on personal injury claims had expired because the accident occurred over one year prior, on August 26, 2018.[7] Consequently, according to Ford, Kerr's cross-claim against Ford would have been barred on November 18, 2019, "the time the claims asserted in the complaint were interposed." *See* Tenn. Code Ann. § 28-1-114(a). Because the cross-claim was untimely, Ford avers, it would have been futile to allow the amendment asserting it.[8]

Kerr, on the other hand, argues, inter alia, that there is no requirement within section 28-1-114(a) that Ford must have been an original defendant in order for section 28-1-114(a) to save his cross-claim. Instead, according to Kerr, section 28-1-114(a) only requires the original complaint to have been filed within the applicable statute of limitations.

The issue of the meaning of "the complaint" in section 28-1-114(a) is an issue of first impression. The statute has been cited in only nineteen cases, none of which illuminate the question here. Some of those cases have used the term "original" when describing the operative complaint under section 28-1-114(a), which appears to support Kerr's position on appeal. *See, e.g.*, ***Rayburn v. E.J. Const. Eng'g, Inc.***, No. 03A01-9306-CV-00212, 1994 WL 27616, at *4 n.1 (Tenn. Ct. App. Feb. 3, 1994) ("[T]he filing date of a counter-complaint, for purposes of calculating the statute of limitations, is considered to be the same as the filing date of the original complaint."); ***Phelps v. Benke***, No. M2015-02212-COA-R3-CV, 2017 WL 113965, at *8 (Tenn. Ct. App. Jan. 11, 2017) (citing ***Rayburn***,

---

[7] Tennessee Code Annotated section 28-3-104 contains the relevant statute of limitations applicable to personal injury actions:

> (a)(1) Except as provided in subdivision (a)(2), the following actions shall be commenced within one (1) year after the cause of action accrued:
>
> > (A) Actions for libel, injuries to the person, false imprisonment, malicious prosecution, or breach of marriage promise[.]

Tenn. Code Ann. § 28-3-104 (a)(1)(A).

[8] Neither Moss nor Mitchell argue on appeal that Kerr's motion to amend is futile because the cross-claim is time-barred by the statute of limitations. In fact, Mitchell explicitly concedes in his appellate brief that "futility of amendment [is] not implicated in this case." Further, Armstrong and Dotson did not file appellate briefs, and it appears that only Ford and Moss opposed Kerr's motion to amend in the trial court. Thus, Mitchell, Moss, Armstrong, and Dotson may have waived their right to make any such arguments. Furthermore, it is unclear if the trial court intended to deny Kerr's motion to amend only as to Ford and Moss, but not the other cross-defendants. For example, in the order denying the motion to alter or amend, the trial court stated, "Kerr had sought to amend his answer(s) to assert cross-claims against [Moss and Ford]." Nevertheless, it appears that all parties understood the trial court's order to have denied the motion to amend in its entirety. Thus, out of an abundance of caution, we will proceed to consider whether Kerr's amendment would be futile as it applies to all of the cross-defendants.

1994 WL 27616, at *4 n.1) (explaining that section 28-1-114(a) means that a counterclaim "receive[s] the benefit of the original filing."). However, these cases each involved only two original parties to lawsuits and counter-claims made by the original defendants in those suits—not a cross-claim against a party that was not first named in any original pleading, but rather in a later pleading. Thus, while these cases do buttress the interpretation of section 28-1-114(a) that we adopt, *infra*, they did not directly resolve the question presented in this case. *Cf.* **Owens v. Truckstops of Am.**, No. 01A-01-9305-CV-00208, 1994 WL 115878, at *11 (Tenn. Ct. App. Apr. 6, 1994), *aff'd as modified*, 915 S.W.2d 420 (Tenn. 1996) (Koch, J., concurring in part and dissenting in part) ("Judicial decisions are authority for the points actually decided."); **Harrison v. Wilkerson**, 56 Tenn. App. 188, 194–95, 405 S.W.2d 649, 652 (1966) ("It is axiomatic that an opinion in a former case is authority only for the points actually decided and that  general expressions in the opinion are to be taken and understood as made in connection with the case under consideration. Language which was not decisive in the former decision is not binding as a precedent."). As a result, we must still determine the statute's meaning for purposes of applying it to this appeal.

In doing so, we keep the following principles in mind:

The construction of a statute is a question of law subject to de novo review with no presumption of correctness. The primary purpose of statutory construction is "to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." Courts must restrict their review "to the natural and ordinary meaning of the language used by the legislature in the statute, unless an ambiguity requires resort elsewhere to ascertain legislative intent."

**State v. Johnson**, 79 S.W.3d 522, 526 (Tenn. 2002) (citations omitted). We therefore begin with the express language of the statute.

On its face, section 28-1-114(a) is unclear. First, its use of "interposed" is perplexing. "Interpose" "is the term traditionally used for pleadings and motions made by *the defense*." *Garner's Dictionary of Legal Usage* 473 (3d ed. 2011) (emphasis added); *see also Black's Law Dictionary* 894 (9th ed. 2009) (emphasis added) (defining "interposition" as "1. The act of submitting something (such as a pleading or motion) as a *defense* to an opponent's claim."). Thus, claims asserted in a typical complaint are not "interposed," because they are made by a plaintiff, not a defendant. Second, the statute does not specify whether "the complaint" refers to the original complaint in a suit or the complaint in which a new party was brought in. Other states have similar laws that specify they apply to the "original" complaint. *See, e.g.*, 735 Ill. Comp. Stat. Ann. 5/2-616(b) (emphasis added) ("The cause of action, cross claim or defense set up in any amended pleading shall not be barred by lapse of time under any statute or contract prescribing or limiting the time within which an action may be brought or right asserted, if the time prescribed or limited had not

expired when the *original* pleading was filed[.]"). But our statute provides no such illumination. Because of these ambiguities in the language of section 28-1-114(a), we must "resort elsewhere to ascertain legislative intent." ***Johnson***, 79 S.W.3d at 526.

We therefore turn to the legislative history of section 28-1-114(a) to glean whether the legislature intended for "the complaint" to refer to the original complaint in an action. Section 28-1-114 was first enacted in 1978. *See* 1978 Tenn. Pub. Acts 740. It was subsequently amended on May 20, 1983. *See* 1983 Tenn. Pub. Acts 652. We examined the Tennessee Senate's consent calendar from May 9, 1983, which includes a Summary of General Bills published by the Office of Legislative Services for members of the Tennessee General Assembly.[9] Therein, it states, in relevant part:

> [Senate Bill 955] would amend TCA 28-1-114 to include cross-claims with
> counter-claims and third party complaints as a part of the set of civil actions
> that are: (1) not barred by any statutory limitation of time unless it was barred
> at the time of filing of the *original* complaint.

Summary of General Bills, Consent Senate Calendar at 1 (May 9, 1983) (emphasis added). Thus, while the statute does not explicitly reference the "original" complaint, this legislative record clearly indicates that the legislative intent behind section 28-1-114(a), at its inception, was to make the original complaint in a case the operative complaint for purposes of the statute. Moreover, while the statute's use of "interposed" is somewhat confusing, this legislative history demonstrates that what the legislature meant by "at the time the claims asserted in the complaint were interposed," was "at the time of filing of the original complaint." *See* Summary of General Bills, Consent Senate Calendar.

Therefore, in order to determine whether Kerr's cross-claim is barred by the applicable one-year statute of limitations, we must look to whether it would have been barred at the time the original complaint in the case was filed. The first complaint in this case was Mr. Jorgenson's initial complaint, filed May 8, 2019. Roach then filed her initial complaint on July 9, 2019, and the Warfields filed their initial complaint on August 23, 2019. The accident occurred on August 26, 2018. Regardless of whether we consider the very first complaint filed by Mr. Jorgenson or either of the two initial complaints filed by the other plaintiffs to be the original complaint here, they were all filed within one year of the accident, and therefore within the applicable statute of limitations. Because the legislative history confirms that under section 28-1-114(a), Kerr's cross-claim "receive[s] the benefit of the [Plaintiffs'] original filing[s,]" even the latest of which was filed within the statute of limitations, his cross-claim was timely. *See* ***Phelps***, 2017 WL 113965, at *8 (citing ***Rayburn***, 1994 WL 27616, at *4 n.1). Therefore, Kerr's cross-claim is not time-barred as to any of the cross-defendants. Consequently, his amended answer would not be

---

[9] This legislative history was provided to us by the Legislative History Department of the Tennessee State Library and Archives in Nashville, Tennessee.

not futile.

**D.**

We now address whether the motion to amend was properly denied under the remaining *Merriman* factors: undue delay in filing; lack of notice to the opposing party; repeated failure to cure deficiencies by previous amendments; and undue prejudice to the opposing party.[10] *See Merriman*, 599 S.W.2d at 559. These factors overlap significantly and are not amenable to precise definition. Rather, they require a holistic and case-specific analysis. *Cf. Hardcastle*, 170 S.W.3d at 81 ("Analyzing the prejudicial effect of a proposed amendment requires a careful examination of the facts of the case. The courts must consider the position of both parties and the effect that granting or denying the request will have on each of them.").

Appellees contend that each of these four *Merriman* factors are applicable. They argue that Kerr impermissibly delayed in filing the motion to amend and that they lacked notice of his intent to assert a cross-claim, in part because he repeatedly failed to assert cross-claims in the many pleadings he filed prior to the motion to amend. Moss and Ford also argue that when Kerr filed pleadings alleging fault against them but not asserting cross-claims, he implicitly signaled that he did not intend to assert claims against them. Finally, Appellees argue that they would suffer undue prejudice if the amendment were allowed because, inter alia, Kerr sought $800,000.00 in damages and they had already prepared for mediation scheduled for July 2020, including completing significant discovery and investigation and evaluating their defenses and financial exposure based on Plaintiffs' claims.

Kerr argues there is no undue delay, especially considering the application of section 28-1-114(a), discussed *supra*, and because the motion to amend was filed two months after the cases were consolidated and the same day that Kerr's personal injury attorney filed his notice of appearance. Kerr also claims, inter alia, that the cross-defendants cannot show prejudice because they would have defended against his cross-claims while defending against Plaintiffs' claims, using the same discovery and evidence. Kerr notes that lack of prejudice is particularly evident with respect to Ford, since Ford was given leave to amend its answer to allege comparative fault of a non-party, after Kerr's motion to amend was denied and almost two years after the first complaint in the case was filed. As for failure to cure deficiencies in prior amendments, Kerr points out that he had not attempted in prior filings to assert his cross-claim, but instead was merely answering complaints, so he had not made deficient allegations that needed curing.

We begin by noting that delay alone is often not a sufficient ground for denying a motion to amend. *See Kemmons Wilson, Inc. v. Allied Bank of Texas*, 836 S.W.2d 104,

---

[10] Appellees each expressly concede in their appellate briefs that the third *Merriman* factor, bad faith by the moving party, is inapplicable to this case. We will therefore not address that factor.

108 (Tenn. Ct. App. 1992) ("Delay in filing the amendment, however, is not the only factor to be considered in deciding whether to allow an amendment to raise a new defense."); *e.g.*, **Weston**, 2007 WL 394644, at \*3–4 (allowing a plaintiff to amend a complaint three months prior to trial and three years after the complaint was initially filed). There is no bright line designating what length of time constitutes undue delay in filing a motion to amend; instead, we must look at the reasons for the delay in determining if it was undue. *See* **March v. Levine**, 115 S.W.3d 892, 909 (Tenn. Ct. App. 2003) (internal citation omitted) ("While delay alone is an insufficient basis for denying leave to amend, unexplained delay coupled with other factors may constitute 'undue delay[.]'").

One circumstance that Tennessee courts have deemed potentially sufficient to excuse a delay in filing a motion to amend is when the filing party obtains new counsel. For example, in **Gardiner v. Word**, 731 S.W.2d 889, 890 (Tenn. 1987), our supreme court held that the defendants had not unduly delayed in filing motions to amend their answers to assert counterclaims and affirmative defenses "slightly less than one year since the filing of the complaint and only eight days before trial," explaining:

> Regarding the timeliness of the amendments, one must note that the motions to amend were filed within one year after the complaint was filed and that only two months earlier the trial court had allowed the defendants' counsel to withdraw from the case shortly before trial. New counsel was soon thereafter retained and had filed the motions within sixty days, not an unreasonable time for new counsel to familiarize themselves with the facts and status of a case already in progress, particularly in light of the fact that it was by then becoming apparent that the defendants themselves, who had previously been represented by the same counsel, may have had cross-claims against one another.

*Id.* at 892. Thus, the fact that the defendants retained new counsel weighed in favor of excusing their two-month delay in filing motions to amend. *Id.* Moreover, in concluding that it was reasonable for the defendants to have delayed their amendments, the court considered that over the course of the litigation, it became clear that the defendants might have had cross-claims against each other. *Id.* Similarly, and relying in part on the reasoning in **Gardiner**, in **Stephens v. Home Depot U.S.A., Inc.**, 529 S.W.3d 63, 78 (Tenn. Ct. App. 2016), this Court allowed a defendant to amend its answer to assert a new defense two months after it retained a new attorney and within one year of the complaint being filed, even though the scheduling order deadline for amendments had passed and trial was set to begin shortly.

In other cases, this Court has explained that a delay in filing a motion to amend may not be undue if the case has not yet progressed significantly, or if allowing the amendment would not introduce new issues that would inordinately complicate the parties' litigation strategies. *See, e.g.*, **Hardcastle**, 170 S.W.3d at 81 (internal citations omitted). These are

also relevant factors when assessing undue prejudice:

> Late amendments fundamentally changing the theory of a case are generally not viewed favorably when the facts and theory have been known to the party seeking the amendment since the beginning of the litigation. Accordingly, the courts usually deny this sort of amendment when the opposing party can legitimately claim surprise or when it will (1) cause additional expense and the burden of a more complicated and lengthy trial, (2) require the opposing party to engage in significant additional pre-trial preparation, (3) unduly increase discovery, or (4) unduly delay the trial.

*Id.*

An example of these principles in action is *Wray*, where the defendant filed a motion to amend that sought to add a counterclaim for personal injuries almost one year after he had answered the original complaint. *Wray*, 2009 WL 1438247, at *1, 4. Although the parties' depositions had already been taken by the time the motion to amend was filed, full discovery had not been completed, the case was not set for trial, and no medical proof had been taken. *Id.* at *1, 2. Additionally, "the same evidence would have been used if the amendment had been allowed, because the issue of who was at fault in th[e subject] accident was the pivotal issue from the outset." *Id.* at *3. And fault was the only issue explored during the depositions that had already occurred. *Id.* Moreover, the "[p]laintiffs admitted they had notice from the beginning that [the] defendant felt they were at fault and that he intended to file a claim against them," because the defendant "alleged comparative fault in his timely answer, and notified [the] plaintiffs by letter that he intended to assert a counterclaim as early as [the same month he filed his answer]." *Id.* at *2, 3. Consequently, this Court held that the defendant did not unduly delay in filing his motion to amend and the plaintiffs were not prejudiced by the delay or by "'wasted' discovery or preparations for depositions," concluding also that the plaintiffs would not "have prepared differently if the counterclaim had been filed." *Id.* at *3, 4.

Similarly, in *Weston*, this Court explained that a plaintiff's motion to amend had not prejudiced the defendant's ability to defend the suit because "[n]o new evidence was required to resolve the issue. In other words, the amendment did not implicate additional evidence of which the [defendant] had been unaware and did not change the relief sought." 2007 WL 394644, at *6 (citing *Hunt v. Temco, Inc.*, 61 Tenn. App. 35, 55–56, 452 S.W.2d 879, 888 (1969) (citations omitted) (holding that a late-filed amendment asserting recovery upon a quantum meruit basis did not constitute a new cause of action barred by the statute of limitations because (1) the same evidence could have been used to support either a quantum meruit or contract claim and (2) the measure of damages was the same under both claims)); *see also* **Guarantor Partners v. Huff**, 830 S.W.2d 73, 77 (Tenn. Ct. App. 1992) (citing **Garthright v. First Tennessee Bank**, 728 S.W.2d 7, 9 (Tenn. Ct. App. 1986)) (explaining, in a case where the defendant should have been allowed to amend his answer

- 13 -

to implead third-party defendants, that "defendants should be freely permitted to amend their answers when a case has not been set for trial, when discovery ha[s] not been completed, and when the plaintiff will suffer no prejudice except insofar as the defense itself might prevail.").

If the party opposing the motion to amend has itself been allowed to amend pleadings, there is also a lower likelihood of finding undue delay or undue prejudice. For example, in **Kemmons Wilson**, after answering the plaintiffs' complaint and seeking removal to federal court, the defendants amended their answer during trial to raise a new defense. **Kemmons Wilson**, 836 S.W.2d at 108. The trial occurred approximately three and-a-half years after the defendants had filed their initial answer, after they had already amended their answer once, and after both parties had engaged in extensive discovery. *Id.* The plaintiffs argued that the defendants unduly delayed in raising the new defense during trial. *Id.* However, this Court held that the plaintiffs had not demonstrated how the amendment had prejudiced them and noted that the plaintiffs were also allowed to amend their complaint at trial to add a new party. *Id.* Therefore, we held that the trial court did not abuse its discretion in allowing the defendants to amend their answer to raise the new defense. *Id.*; *see also* **Stephens**, 529 S.W.3d at 78 (considering that the "[the p]laintiffs had amended their complaint numerous times throughout the litigation, including once after the deadline for amendments to the pleadings," in holding that the defendant had not unduly delayed filing its motion to amend).

Here, Kerr filed his motion to amend approximately nine months after the original complaint by Mr. Jorgenson—but this request came less than two months after the cases were consolidated, less than three months after Ford became a party, and less than six months after Dotson and Armstrong became parties. We are not convinced that this was a per se unreasonable delay, given that we have allowed amendments that were delayed longer than Kerr's, sometimes significantly. *See, e.g.*, **Gardiner**, 731 S.W.2d at 890 (holding that defendants had not unduly delayed in filing motions to amend their answers "slightly less than one year since the filing of the complaint"); **Weston**, 2007 WL 394644, at *3–4 (allowing amended complaint three years after the initial complaint was filed); **Kemmons Wilson**, 836 S.W.2d at 108 (allowing defendants to amend their answer approximately three and-a-half years after they had filed their initial answer). Granted, this case is more procedurally complex than usual, but if anything, that is more reason to allow Kerr's amendment. In this case, three sets of plaintiffs filed three separate initial complaints at three different times. Those plaintiffs each subsequently amended their complaints (one of them twice) at different times to bring in new parties. The different cases were not consolidated until seven months after the original complaint was filed. Therefore, this case was procedurally chaotic from the outset, involving multiple parties, multiple amendments, and multiple courts. Allowing Kerr to amend his answer to assert a cross-claim amidst this backdrop is squarely within the requirement that amendments be freely allowed in the interests of justice and deciding issues on the merits. *See* Tenn. R. Civ P. 15.01; **Weston**, 2007 WL 394644, at *6.

It is true, however, that Kerr was on notice of his own injuries well in advance of his decision to file a cross-claim. This fact certainly weighs in favor of finding undue delay. *See March*, 115 S.W.3d at 909 ("One such factor [in finding undue delay] is where the party seeking to amend has known all of the facts underlying the amendment since the beginning of the litigation."). But the record demonstrates that Kerr filed his motion to amend the same day his new attorney filed a notice of appearance. It appears to be undisputed that prior to that, Kerr was being represented by an attorney provided by his liability insurance carrier. Kerr claims that this attorney was retained by the insurance carrier only for the purpose of defending claims against him, not asserting any affirmative claims on his behalf. We have no reason to doubt this. *See also **Petition of Youngblood***, 895 S.W.2d 322, 326 (Tenn. 1995) (emphasis added) (quoting 1A Rowland H. Long, The Law of Liability Insurance § 5.01 (1992)) ("The duty of an insurer to *defend* a claim brought against its insured under the terms of a liability policy is one of the most important benefits included in a policy of liability insurance."). In such cases, where the nature of the parties' rights and remedies is clarified throughout the course of the litigation, we have allowed some leeway in filing amended pleadings. *See **Gardiner***, 731 S.W.2d at 892 (concluding that it was reasonable for defendants to have delayed amending their answers, taking into account that it had become clear over the course of the litigation that the defendants might have had cross-claims against each other). And, as discussed *supra*, this Court has previously considered a party retaining new counsel a valid reason to delay filing amended pleadings, even for a matter of months. *See **Gardiner***, 731 S.W.2d at 892; **Stephens**, 529 S.W.3d at 78. Here, Kerr's new attorney, hired to represent Kerr in a different capacity than Kerr's prior insurer-retained counsel, filed the motion to amend the very day he filed his notice of appearance. Therefore, Kerr's delay in filing the motion to amend was not undue, nor does his prior attorney's failure to assert a cross-claim warrant denying his new attorney's effort to amend his answer.

We acknowledge that Kerr's comparative fault allegations against the cross-defendants are not the strict equivalent of notice that he planned to file a cross-claim. However, the comparative fault allegations at least provided the cross-defendants some form of notice that Kerr considered them to be liable, which reasonably could be interpreted as a signal that a cross-claim may be on the horizon. *See **Wray***, 2009 WL 1438247, at *2 (when considering whether the plaintiffs had notice that the defendant felt they were at fault and intended to file a claim against them, noting that the defendant timely filed an answer alleging comparative fault).

Moreover, Kerr does not appear to have unduly delayed in alleging comparative fault. In his first answer, he alleged general comparative fault of named and unnamed parties. While we do not expect a non-party to glean from such a general allegation that they may become subject to a cross-claim, the fact that Kerr asserted comparative fault from the start evidences his intent to preserve possible claims. Moreover, shortly after filing his first answer, Kerr filed an amended answer specifically alleging Moss and Mitchell's

comparative fault. He appears to then have alleged Armstrong and Dotson's comparative fault in answers he filed a bit less than a month and-a-half after he received notice of their potential fault (after Moss raised it).[11] And given that Kerr was the first party to allege fault against Ford, there is no evidence that Kerr was somehow aware of Ford's potential fault for an inappropriately long time before he alleged it. Therefore, we conclude that Kerr acted with reasonable diligence in alleging comparative fault against the cross-defendants, which in turn provided them at least some notice that he may eventually file a cross-claim against them.

Additionally, the fact that Ford was allowed to amend its answers after Kerr sought to amend his answer weighs in favor of allowing Kerr's amendment. Granted, Ford sought to add an allegation of comparative fault, whereas Kerr sought to add a cross-claim. Nevertheless, whether other parties have been allowed to make amendments is a factor this Court has considered in evaluating if a motion to amend was properly granted or denied. *See, e.g.*, *Kemmons Wilson*, 836 S.W.2d at 108. And we note that of the seven answers that Kerr filed prior to his attempt to file his cross-claim, only one involved an amendment made by him; every other answer was either an initial answer to an original complaint or an initial answer after the plaintiffs amended their complaints. Thus, while the number of answers filed by Kerr in this case appears on its face to be unreasonable, the truth is that Kerr was not repeatedly failing to correct deficiencies in his pleadings via prior amendments. *Merriman*, 599 S.W.2d at 559.

Finally, this is not a case involving a "[l]ate amendmen[t] fundamentally changing the theory of [the] case." *Hardcastle*, 170 S.W.3d at 81. Fault for injuries caused by the accident appears to be the main issue in this case. Thus, allowing Kerr to amend his answers to file a cross-claim would not have fundamentally changed the case, especially because the cross-defendants were already defending against other claims of fault. *See Wray*, 2009 WL 1438247, at *3 ("[T]he same evidence would have been used if the amendment had been allowed, because the issue of who was at fault in this accident was the pivotal issue from the outset."); *Weston*, 2007 WL 394644, at *6 ("No new evidence was required to resolve the issue. In other words, the amendment did not implicate additional evidence of which the [defendant] had been unaware and did not change the relief sought.").

Moreover, no depositions had been taken and a trial date had not been set when Kerr sought to amend his answers, so the amendment would not have "require[d] the opposing part[ies] to engage in significant additional pre-trial preparation, [] unduly increase[d] discovery, or [] unduly delay[ed] the trial." *Hardcastle*, 170 S.W.3d at 81 (citations

---

[11] It appears that Kerr intended to allege comparative fault against both Dotson and Armstrong in these answers, because he stated in the paragraph containing comparative fault allegations, "Kerr would further aver that based on the allegations of [Moss] . . . , James W. Mitchell and Vernon A. Dotson, Jr., individually and d/b/a D & D Tire & Repair, was guilty of fault that caused and/or contributed to the accident in this case." Therefore, it appears that Kerr meant to reference Armstrong, not Mitchell, because Mitchell is not related to D&D Tire and Repair.

omitted).[12] In *Wray*, we allowed an amendment even where depositions had already been taken, whereas here, they had not been taken at the time Kerr filed the motion to amend. *Wray*, 2009 WL 1438247, at \*1, 2 ("While the parties' depositions had already been taken by the time the motion to amend was filed, discovery had not been completed, the case was not set for trial, and no medical proof had been taken."). And while the cross-defendants may be "prejudice[d] . . . insofar as [Kerr] might prevail," that is not a reason to deny the motion to amend in a case such as this, "when [it] has not been set for trial [and] when discovery ha[s] not been completed." *Huff*, 830 S.W.2d at 7 (citing *Garthright*, 728 S.W.2d at 9). Consequently, Appellees have not convinced us that they would be unduly prejudiced by Kerr's amended pleading. On the other hand, the prejudice to Kerr in denying him the right to assert his cross-claim is self-evident, as he may be denied full relief on the merits. *See Hardcastle*, 170 S.W.3d at 81 (explaining that determining the prejudicial effect of an amendment requires, inter alia, "inquiring into (1) the hardship on the moving party if the amendment is denied").

Given the complexities of this case, the multitude of parties, claims, and amendments on the whole, and the fact that the cases were not consolidated until December 2019, we cannot conclude that Kerr unduly delayed in filing the motion to amend or repeatedly and impermissibly failed to raise his cross-claim. We also conclude that the cross-defendants cannot "legitimately claim surprise," *Hardcastle*, 170 S.W.3d at 81, as Kerr had at least asserted general comparative fault allegations in his first answer, and proceeded to assert more specific comparative fault allegations against the cross-defendants as he became aware of their potential fault. Finally, given that discovery had not been completed, there was no trial date, and Kerr's cross-claims did not seek to

---

[12] Moss argues that "[c]ontrary to Kerr's assertion that '[o]nly preliminary written discovery was ever completed[,]' the parties exchanged voluminous sets of interrogatories, requests for production of documents and requests for admission prior to February 14, 2020." Moss continues that "the parties had sufficiently developed and evaluated their respective cases to enable them to resolve nearly all of the Plaintiffs' claims at the July 2020 mediation, a mere five months after Kerr first sought to include his cross-claims." First, Moss does not cite to the record to support these assertions, and it is not our duty to comb the record to find support for them. *See* Tenn. R. App. P. 27 (directing parties to include in the argument sections of their briefs "citations to the authorities and appropriate references to the record"); *see also Cartwright v. Jackson Cap. Partners, Ltd. P'ship*, 478 S.W.3d 596, 616 (Tenn. Ct. App. 2015) (citation omitted) ("'[J]udges are not like pigs, hunting for truffles' that may be buried in the record."). It is Moss's burden to demonstrate it would be prejudiced if Kerr's motion to amend were granted, so its failure to include record citations is even more problematic in this instance. *See Kemmons Wilson*, 836 S.W.2d at 108. Nonetheless, it appears to be undisputed that only written discovery had been completed, and thus no depositions had been taken when Kerr sought to amend his answers.

Second, we are not aware of proof to support the claim that the cross-defendants had already prepared for mediation by the time Kerr attempted to assert his cross-claim. The trial court did not mention the mediation in its order denying the motion to amend—it only mentioned this fact in the order denying the motion to alter or amend—suggesting that mediation had not yet been set when the motion to amend was filed and then ruled on. Thus, it would be unfair and illogical to use the fact that mediation was scheduled after Kerr sought to assert a cross-claim as a justification for denying his ability to assert that claim.

- 17 -

introduce new issues that would fundamentally change the case, the cross-defendants would not be unduly prejudiced by Kerr's motion to amend being granted. Therefore, we hold that the trial court abused its discretion in denying Kerr's motion to amend. Upon remand, the trial court is to grant Kerr's motion to amend as to each of the cross-defendants, and Kerr shall be permitted to proceed on the merits of his cross-claim.

Finally, to the extent that Kerr raises issues regarding not having been provided a hearing on his motion to amend, motion to alter or amend, and interlocutory appeals, those are pretermitted given our holding that the motion to amend should have been granted.

## III. CONCLUSION

The judgment of the Circuit Court for Robertson County is reversed. This cause is remanded for further proceedings consistent with this Opinion. Costs of this appeal are taxed equally to Appellees Moss Motor Company, Inc., James W. Mitchell d/b/a The Tire Shop, and Tracy Langston Ford, LLC, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE